

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   SEP 5 2001

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
### NEW ORLEANS DIVISION

| | | |
|---|---|---|
| TERREBONNE PARISH SCHOOL BOARD | § § § | |
| Plaintiff | § § | CIVIL ACTION NO. 00CV0310 |
| v. | § § § | SECTION "B" |
| MOBIL OIL CORPORATION | § § | MAGISTRATE 5 |
| Defendant | § | |

### DEFENDANT MOBIL OIL CORPORATION'S
### MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes defendant Mobil Oil Corporation

("Mobil") who moves for summary judgment dismissing plaintiff Terrebonne Parish School Board's

claims against it with prejudice pursuant to Federal Rule of Civil Procedure 56 based upon the

undisputed material facts and law set forth in Mobil's memorandum filed herewith.

C:DOCS\TPSB\SJ-MTN

Fee____
Process____
X  Dktd____
CtRmDep____
Doc.No. 74

Respectfully submitted,

**FRILOT, PARTRIDGE, KOHNKE
& CLEMENTS, INC.**

**ROBERT B. McNEAL (Bar No. 14211)**
**MILES P. CLEMENTS (Bar No. 4184)**
**SHERI S. FAUST (Bar No. 26283)**
3600 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3600
Telephone: (504) 599-8014
Facsimile : (504) 599-8114

**Counsel for defendant Mobil Oil Corporation**

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing pleading has been served upon counsel of record fo all parties by facsimile transmission, hand delivery, by delivery service, delivery charges prepaid and properly addressed, or by U.S. Mail, postage prepaid and properly addressed, this 5 day of September, 2001.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TERREBONNE PARISH** | § | |
| **SCHOOL BOARD** | § | |
| | § | **CIVIL ACTION NO. 00-310** |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **SECTION "B"** |
| | § | |
| | § | |
| **MOBIL OIL CORPORATION** | § | **MAGISTRATE 5** |
| | § | |
| **Defendant** | § | |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

    This memorandum is submitted by defendant Mobil Oil Corporation ("Mobil") in support

of its motion for summary judgment seeking dismissal of plaintiff Terrebonne Parish School Board's

("School Board's") claims.

### INTRODUCTION

    This case involves whether an oilfield canal located in the marshes of western Terrebonne

Parish should be filled. The canal was dug in 1959 by Mobil on marshland managed by the School

Board. According to the School Board, Mobil's failure to fill the canal after it ceased mineral

activities on the property in 1959 breached a duty under either tort or contract law to maintain the

C:\DOCS\TPSB\SJ-MEMO

canal, and that breach caused the marsh to erode. Based on these allegations, the School Board filed this lawsuit demanding that Mobil fill in the canal forty years after it was built.

In fact, the School Board's claims should be dismissed. As set forth below, the tort and contract claims are prescribed because the canal has existed since 1959 and the School Board has been aware of erosion in its marsh properties related to oilfield canals since at least 1982. Furthermore, the School Board never had a contract with Mobil. As a result, the law and undisputed facts establish that summary judgment should be granted dismissing the School Board's claims.

## STATEMENT OF FACTS

### A.    The Property At Issue

The property at issue in this case is a 640 acre tract located in western Terrebonne Parish near the mouth of the Atchafalaya River. It is a Section 16 land, which are public lands consisting of the 16th sections of various townships dedicated for the benefit of public education. Parish school boards are entitled to use these lands for educational purposes, including leasing them to generate revenues for educational purposes.[1]

The Section 16 land at issue in this case is marshland located at Section 16, Township 18 South, Range 12 East ("Property"). Throughout the last century, the Property has been leased by the School Board for various purposes, including trapping, hunting, and oil & gas activities. The Property is one of many Section 16 tracts managed by the School Board that are located in Terrebonne Parish's coastal marshes.

---

[1]    The School Board does not, however, own Section 16 lands; they are owned by the State of Louisiana. [See School Board Resolution 1292 attached as Ex. 1].

C:\DOCS\TPSB\SJ-MEMO                    2

**B.    The Canal At Issue and Other Mineral Leases**

The canal at issue was dug on the Property when the School Board had a mineral lease with Southern Natural Gas Company. This lease was dated December 17, 1957 and had a three year original term. The term could be extended beyond the three year primary term for as long as oil and gas was being produced from the lease. [See Section 2 of lease, copy attached as Ex. 2.] As an initial rental payment, Southern Natural paid $38,834.91 to the School Board. [*Id.* at Section 1]. The lease specifically granted Southern Natural and its assignees the right to dredge canals on the Property and perform other works for the purpose of conducting oil and gas exploration. [*Id.* at p. 1]. The lease terms did not require Southern Natural to fill canals when the lease ended. [*Id.*].

In 1959, a Mobil predecessor, Magnolia Petroleum Company, became interested in drilling a well on the lease and requested a farmout from Southern Natural.[2] Under a farmout, the party receiving the farmout agrees to drill a well on a mineral lease for the leaseholder's benefit in exchange for an agreement by the leaseholder to assign an interest in the lease if the well is successful. *Robinson v. No. American Royalties, Inc.*, 509 S.2d 679,681 (La. App;. 3d Cir. 1087). Southern Natural granted the farmout and Mobil then dredged a canal in late 1959 on the southeastern quarter of the Property to access the well's drill site. The well was a dry hole, however, and was plugged and abandoned by Mobil in December 1959. [Plug and Abandon Report dated 12/24/59 attached as Ex. 3]. Southern Natural never assigned an interest in the lease to Mobil. When Southern Natural's lease ended, the canal was left in place. The School Board has no evidence that it demanded that the canal be filled by Mobil or Southern Natural prior to this lawsuit.

Subsequently, the School Board again leased the property for oil & gas exploration and

---

[2]    For the sake of simplicity, Magnolia is referred to as Mobil hereinafter.

development. It granted mineral leases on the entirety of the Property to the following persons for the indicated initial rental payment[3], excluding royalties:

| | | |
|---|---|---|
| 10/22/64 | W. S. Rownd Company | $ 19,864.80 |
| 6/9/71 | Corbin I. Robertson | $ 44,858.80 |
| 5/18/85 | Pennzoil Producing Company | $300,000.00 |
| 7/14/97 | LLOG Exploration Company | $   6,919.16 |

The School Board is not aware of any instance where the Property was leased unless and until the prior lease had expired or terminated. Despite receiving the rental payments and additional royalty payments from mineral production, the School Board has never spent any money to maintain or repair the Property, including the canal at issue.

### C.    TPSB's Knowledge of the Erosion in Section 16 Properties

As reflected in the following examples, the School Board had knowledge of erosion in Section 16 properties from oilfield canals for decades before this lawsuit was filed.

By 1981, the School Board was aware that its Section 16 lands in the Terrebonne marsh were eroding. In May 1981, the School Board reconsidered a request to dredge a canal on its marsh property for a drilling site access because of concerns about erosion. [Article from Houma Daily Courier dated 5/8/81 attached as Ex. 4]. Board member Francis Voisin argued that the dredging would make an already bad erosion problem worse. [*Id.*]

On August 18, 1981, the School Board approved the hiring of an engineering firm, T. Baker Smith & Son, Inc., to prepare a report regarding erosion in Section 16 lands. [Minutes of Proceedings

---

[3]    As reflected in the leases, the Property is partially owned by the St. Mary Parish School Board. This fact is not pertinent to the grounds for this motion. Also, these payments exclude royalties and delay rentals that the School Board may have received.

C:\DOCS\TPSB\SJ-MEMO                    4

of School Board dated 8/18/91 attached as Ex. 5]. On January 13, 1982, T. Baker Smith submitted

its report. The report was titled "Preliminary Erosion Study of Section 16 Lands (School Board

Properties)." [Copy of report attached as Ex. 6] The report addressed the "erosion problem" on

Section 16 lands since 1955. [*Id.* at cover letter dated 1/13/82]. Its stated purpose was "to assist the

Terrebonne Parish School Board and residents of Terrebonne Parish to become aware of the rate of

erosion occurring within Terrebonne Parish." [*Id* at 2.] It analyzed five Section 16 tracts, which did

not include the Property, but was intended "to serve as a basis for approximating land loss rates

throughout the parish." [*Id* at 2.] The report summarized the causes of erosion and stated:

> The direct, man-influenced causes for a decrease in land areas are: 1) The breakup of fresh
> marsh and flotant because of increase salinities introduced via navigation, drainage and
> **petroleum related canals**; 2) The **replacement of land area by canals** and borrow pits.....

[*Id.* (emphasis added)].    A School Board employee who managed its Section 16 lands, Charles

Collins, assisted T. Baker Smith with its study. [*Id.* at iii]. On April 13, 1982, Clifford Smith with

T. Baker Smith presented the report to the School Board. [Minutes of School Board meeting dated

4/13/82 attached as Ex.7]. As a result, the School Board was specifically told in 1982 that oilfield

canals could cause erosion on Section 16 lands.

On August 17, 1982, the School Board reaffirmed its knowledge that erosion was occurring.

In response to a proposed Corps of Engineers levee project, the School Board passed a resolution

which stated:

> The erosion of Section 16 lands which lie within the coastal area have
> been of great concern and potential monetary loss to the Terrebonne
> Parish School System....

Furthermore, it approved a letter to the Corps' representative which stated:

> For some time the Terrebonne Parish School Board has been

> concerned about the accelerated erosion of its 16th Section Lands. This process, coupled with the resulting subsidence attributed to dying marsh vegetation, is a potential hazard to the financial structure of our system.
>
> This concern was so great that a committee known as the 16th Section Land Committee was formed and charged with the responsibility of studying, management and monitoring of 16th Section Lands, with a view of making recommendations to the School Boards and Louisiana State legislature for the preservation of landed areas....

[Minutes of School Board dated 8/17/82 attached as Ex. 8].

In February 1984, an environmental consulting firm, Coastal Environments, Inc., prepared a report for the School Board regarding Section 16 lands. The report specifically referred to a 1955-1978 Land Loss map of Terrebonne Parish. [Ex. 9 at p. 2.]

On July 31, 1985, the Section 16 Lands Committee of the School Board considered hiring Coastal Environments, Inc. to address mitigation in Section 16 lands. [Minutes of School Board dated 8/6/85 attached as Ex. 10]. However, the Committee subsequently decided to hold the mitigation issue in abeyance and did not hire Coastal Environments. [Minutes of School Board dated 12/3/85 attached as Ex. 11 and letter to S. Gagliano from K. Willoughby dated 12/4/85 attached as Ex. 12].

In 1989, Herb Carreker was employed by the School Board. Within a few years, he became the School Board's manager for Section 16 lands. As of the time of his hiring, Carreker admits that he was aware of marsh erosion and that oilfield canals could cause such erosion.

In 1993, Coastal Environments approached Carreker and the School Board about preparing a Section 16 management plan and related activities. [Letter to H. Carreker from E. Fike dated 3/12/93 attached as Ex. 13]. As part of its proposal, Coastal Environments proposed an assessment of damages from development, including erosion, on Section 16 lands that needed to be restored or

mitigated. [See Letter to TPSB members from E. Fike dated 4/21/93 attached as Ex.14]. The

proposal made clear that these damages were expected to result in claims against third parties for

restoration or mitigation damages: Coastal Environments proposed doing an assessment on a

contingency basis whereby it would work with the School Board's counsel and be paid a share of

damages which the School Board recovered from third parties. [*Id.* at Attachment B.]

On April 26, 1993, the Section 16 Lands Committee considered Coastal Environments'

proposal. Mr. Carreker gave each committee member a copy of the 1982 T. Baker Smith study and

a letter which he drafted. In his letter, Mr. Carreker stated:

> I am in hopes that the School Board will presently focus on the more
> critical issues pertaining to Section 16 Lands. Other more important
> and serious matters which need to be considered are salt water
> intrusion and land erosion. Unless these matters are addressed and a
> long term comprehensive land management plan initiated, results will
> be continued loss of land with decreasing revenues.
>
> Attached is a preliminary erosion study of Section 15 Land by T.
> Baker Smith & Son, Inc. in 1982. The report concludes that the
> School board is losing a minimum of 1 acre and a maximum of 4
> acres of land per year on 5 sections studied. These sections were
> chosen as a representative cross section of Section 16 Lands.

Despite being expressly advised of erosion and the possibility that claims could exist against third

parties for Section 16 land damages, the Committee did not hire Coastal Environments. [Minutes

of School Board dated 6/1/93 attached as Ex.15] .

In 1994, the School Board received a preliminary plan from the USDA Soil Conservation

Service to manage land located in an area known as the Penchant Basin. [Copy attached as Ex. 16].

This area included seventeen  Section 16 tracts in Terrebonne Parish, including the Property. The

plan stated:

> Normal hydrology for the inland freshwater marshes in the basin has

been altered by both man made and natural changes in the landscape. It is, however, the man made changes in the basin that have impacted the soils the most. *[One] of the man made changes which [has] altered the hydrology of the basin [is] ... the construction of extensive oilfield canal networks in the interior marsh.*

[Penchant Basin Resource Plan draft dated 6/94 attached as Ex. 16 (emphasis added)]. The School Board hired Morris P. Hebert, Inc. to determine whether the plan would provide for closing any canals in its Section 16 lands, including the Property, and to assess the economic impact of the possible closure of existing canals.

On April 13, 1995, Morris Hebert submitted its report to Mr. Carreker. The report stated that Hebert had contacted the Property's current mineral lessee, Pennzoil, and that Pennzoil objected to the closing of any canals on the property, including the canal at issue in this case. [Report of Morris P. Hebert, Inc. (excerpts attached as Ex. 18]. In addition, Hebert concluded that the existing canal was an attractive feature for future operations. closure of the canal would "significantly affect its usefulness (sic) to present and future lessees" and "[a]ny canal or waterway closure which affect leaseholder access to their lease could jeopardize the viability of the property and hence the income to [the School Board." [*Id.* at p. 17 and p.5, respectively]. In addition, Morris Hebert advised the School Board that it had detected "obvious erosion problems" in each of the areas it studied - - including the property on which the canal at issue is located. [*Id.* at p. 5]. In response, the School Board took no action to close the canal.

In August 1996, the School Board was again specifically told that it could file a lawsuit to recover erosion-related damages allegedly caused by oilfield canals. Its counsel in this case, Michael St. Martin, appeared at a Section 16 lands committee meeting and discussed his personal lawsuit seeking to have oilfield canals filled as a result of erosion allegedly caused by their presence

on his property. [Transcript of Proceedings of School Board Finance, Insurance, and Section 16 Lands Committee at pp. 4-5 attached as Ex. 18.] Mr. St. Martin described a possible "monstrous amount of damage" to Section 16 lands and offered his assistance to the School Board in any litigation involving marsh damage. [*Id*. at p. 5.]

In March 1997, the School Board commissioned an inspection of the property due to the termination its mineral lease with LLOG Exploration Company. On March 27, 1997, Malcolm Poincot, a contractor, inspected the Property for environmental damage. [Letter from TPSB to M. Poincot, attached hereto as Ex. 20]. He provided Mr. Carreker with a report of his findings, including photographs of the canal and opening at the end of the canal. [Poincot Report dated 3/27/97 attached as Ex. 20].

On October 19, 1999, the School Board filed this lawsuit against Mobil. It alleged that the canal dredged in 1959 should have been filled when Mobil ceased mineral activities on the Property. [Petition,¶¶ 24-26. Ex. 19]. The Petition also alleged that Mobil was liable in tort and contract for failing to fill in the canal and the resulting erosion damages.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted if the record shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *New Orleans Parish School Board v. Asbestos Corp., Ltd., et al*, 114 F. 3d 66 (5th Cir. 1997), *cert denied,* 118 S. Ct. 557 (1997) (where plaintiff aware of environmental problem on property that required repair more than one year before suit filed, claim prescribed even if exact date of knowledge could not be determined). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving part

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "dispute about a

material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106

S.Ct. 2505, 2510 (1986); *Stults v. Conoco, Inc.,* 76 F. 3d 651, 654 (5th Cir. 1996). The

moving party bears the burden of establishing that there are no genuine disputes of material

fact. However, "[if] the crucial issue is one for which the non-moving party will bear the

burden of proof at trial, [the moving party may satisfy its burden by] merely pointing out that

the evidentiary documents in the record contain insufficient proof concerning an essential

element of the non-moving party's claim." *Lavespere v. Niagra Machine and Tools Works,*

*Inc.,* 910 F.2d 167, 178 (5th Cir. 1990); citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325,

106 S.Ct. 2548, 2552 (1986).

## ARGUMENT

### I.    THE SCHOOL BOARD'S TORT CLAIMS ARE PRESCRIBED

Prescription commences to run on a claim based on property damage whenever either of two

circumstances first occurs: (1) the plaintiff obtains actual knowledge of the alleged property damage;

or (2) the plaintiff should have acquired knowledge of the alleged damage. *Trizec Properties, Inc.*

*v. U.S. Mineral Products, Inc.,* 974 So. 602, 607 (5th Cir. 1992); La. C.C. Art. 3493 ("When damage

is caused to immovable property, the one-year prescription commences to run from the day the

owner of the immovable acquired, or should have acquired, knowledge of the damage.") A plaintiff

is deemed to have knowledge of alleged property damage at that point that it can be objectively

determined that the exercise of reasonable diligence would alert a reasonably minded plaintiff of the reasonable possibility that his property was damaged. See *Kendallo Company v. Southern Medical Supplies, Inc.*, 913 F. Supp. 43 (E.D. La. 1996). The prescriptive period commences when a person has knowledge sufficient to provoke an inquiry as to the extent of damage; the injured party does not, however, need detailed knowledge of the extent of damages. *Orleans Parish School Board v. U.S. Gypsum Company*, 892 F. Supp. 794, 801 (E.D. La. 1995), *cert denied*, 118 S. Ct. 557 (1997). Once the facts give rise to a cause of action, a plaintiff must exercise reasonable diligence to ascertain the identity of the parties who allegedly caused the injury. *Dean v. Hercules, Inc.*, 328 So. 2d 69, 79 (La. 1976). The School Board's tort claim is subject to a one-year prescriptive period. La. C.C. Art. 3492 (West 2001).

Under this standard, the undisputed facts establish that the School Board's tort claims are prescribed. The canal has been in existence since 1959. The School Board has known and been actively concerned about erosion of Section 16 marshlands such as the Property since at least 1982, and even commissioned an erosion study in 1982 which specifically reported that oilfield canals could contribute to marsh erosion. Since 1982, the Board has received ongoing reports and information about erosion in Section 16 marshlands, as described above, which clearly establish that it was aware of erosion in Section 16 lands for years before this suit was filed. *New Orleans Parish School Board v. Asbestos Corp., Ltd., et al*, 114 F. 3d 66 (5th Cir. 1997), *cert denied,* 118 S. Ct. 557 (1997) (where plaintiff aware of environmental problem on property that required repair more than one year before suit filed, claim prescribed even if exact date of knowledge could not be determined).

There is no doubt the School Board was aware that it could assert claims for marsh erosion

and restoration more than one year before this suit was filed. In 1993, it received the proposal from Coastal Environments, Inc. to pursue third parties for marsh restoration and damage claims under a recovery-sharing arrangement. In 1996, present counsel for the School Board attended a Section 16 Committee meeting, discussed his personal lawsuit to recover damages and require the filling in of oilfield canals on marsh property, told the School Board that a potential "monstrous amount of damage" existed on Section 16 lands, and offered his assistance.

This Court's recent decision in an essentially identical action brought by the School Board confirms that its claims in this case are prescribed. In *Terrebonne Parish School Board v. Columbia Gulf Transmission Company et al*, Case No. 00-0319 (Lemelle, J.), the School Board alleged that the defendants were obligated to fill in a canal dredged on Section 16 lands in the Terrebonne Parish marsh based upon both Louisiana tort and contract law. Citing School Board minutes as well as the Houma Courier article attached to this memorandum, the Court concluded that the School Board had sufficient notice of erosion to commence prescription in the 1980's. As a result, the School Board's claims were held to be prescribed. [Copy of Order and Reasons dated 1/11/01 attached as Ex.21]. Similarly, the record submitted in this case is even more compelling since it includes the report done by T. Baker Smith in 1982 regarding erosion and additional minutes which clearly show that, by 1982, the School Board was aware that serious erosion was occurring in Section 16 lands.

Another recent case also confirms that the School Board's claims should be dismissed.. In *St. Martin v. Quintana Petroleum Corp.*, 1999 WL 232635 (E.D. La. 1999), the plaintiffs, including the School Board's counsel in this case, owned marsh property in Terrebonne Parish. [Order and Reasons dated 4/19/99 attached as Ex. 22]. They claimed that their land had been damaged by oil exploration activities that the defendants conducted as early as 1995. [*Id.* at * 1]. Their allegations

were similar to those at issue in this case – namely, that the defendants were liable in contract and tort for their failure to restore and fill an access canal dredged in 1956. Like the School Board, the plaintiffs maintained that the presence of the canal caused gradual marsh deterioration over several decades. [*Id.* at * 3].

The Court held that all of the plaintiffs' claims had prescribed. [*Id.* at * 5]. It concluded that the plaintiffs had actual or constructive knowledge of the marsh deterioration more than 20 years before they filed suit. Also, the Court rejected plaintiffs; arguments that the doctrines of *contra non valentem* and continuing tort prevented the running of prescription. [*Id.* at * 3, * 5].

In an effort to cure the untimeliness of its claim, the School Board maintains that Mobil's failure to restore the canal constitutes a continuing tort. In fact, it does not. In its most recent discussion of this doctrine, the Louisiana Supreme Court held that "a continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act." *Crump v. Sabine River,* 737 So.2d 720, 728 (La. 1999). In *Crump,* the Court concluded that a defendant's persistent failure to remove a canal it had dredged did not constitute a continuing tort. *Id.* at 729. Even though the presence of the canal continued to cause flood damage to the plaintiff's property, the damages were not accompanied by continuous bad acts that would justify the application of the continuing tort doctrine. *Id.* Rather, the cause of the damages was, as in this case, the dredging of the canal. *See also Griffin v. Drainage Commission of New Orleans,* 110 La. 840, 34 So. 799 (1903) (Louisiana Supreme Court held claim for ongoing deterioration of building due to digging of ditch next to building was prescribed one year from digging of ditch and continuing tort doctrine not applicable).

A continuing tort argument similar to the School Board's was also rejected in *St. Martin v.*

*Quintana Petroleum.* The plaintiffs in *St. Martin* argued that the oil companies' alleged persistent refusal to restore the access canal constituted ongoing bad acts that justified a continuing tort analysis. 1999 WL 232635 at * 4. The Court disagreed:

> [The defendants'] failure to maintain the canal – is not 'conduct' of the type necessary to support a claim under the continuing tort theory. In order to assert a cause of action for a continuing tort, there must be continuing acts or conduct, coupled with continuing damage ... It is undisputed that the defendants and their predecessors stopped using [the canal], and capped the wells, more than twenty years ago. They have engaged in no conduct since then that gives rise to liability for a continuing tort.

*Is.* at 4-5.

Under the applicable law, the continuing tort doctrine is not applicable. It is undisputed that Mobil stopped using the canal in 1959, when it capped the dry hole. It is undisputed that Mobil has not conducted any mineral operations on the Property thereafter. Plaintiff's allegation that canal allegedly contributed to alleged damages during the intervening decades is insufficient to trigger the continuing tort exception. *See Ready v. State*, 707 So.2d 1250, 1256 (La. App. 3rd Cir. 1997) ("continuing damages do not suffice to create a continuing tort; there must also be continuing acts of fault."); *see also Collum v. E.A. Conway Medical Center*, 2000 WL 792521, * 3 (La. App. 2nd Cir. 2000) (same); *Andre v. Binder,* 753 So.2d 397, 398 (La. App. 1st Cir. 2000) (same). Finally, this Court previously rejected essentially the same argument by the School Board in the *Columbia Gulf* case.

## II.   THE SCHOOL BOARD'S BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED BECAUSE (1) MOBIL WAS NOT IN CONTRACTUAL PRIVITY WITH THE SCHOOL BOARD AND (2) IN ANY EVENT, THOSE CLAIMS ARE PRESCRIBED.

Initially, the School Board's breach of contract claim was based upon Mobil's failure to

restore the Property in breach of a "servitude, right-of-way(s) and/or mineral lease(s)." [Petition at

¶ 18.] When asked to produce these contracts, the School Board was unable to produce a contract

with Mobil. Instead, it responded that Mobil's 1959 farmout from Southern Natural made Mobil

liable under the School Board's mineral lease with Southern Natural dated December 12, 1957.

[Plaintiff's Response to Mobil's Request for Production No. 15 attached as Ex. 24]. Given this

response, the School Board's breach of contract claims should be dismissed on several grounds.

First, the undisputed facts establish that contractual privity did not exist between the School

Board and Mobil. Mobil was not a signatory party to the Southern Natural lease. Also, the farm out

was unsuccessful and there is no evidence that Mobil received an assignment of any interest in the

Southern Natural lease. In addition, Section 8 of the lease provides:

> It is further agreed and understood that the rights of Lessee may be assigned or transferred
> in whole or in part but no transfer, whether in whole or in part, of the herein leased property
> shall be valid unless such transfer or assignment be approved by the Lessor.

There is no evidence that the School Board approved an assignment of Southern Natural's leasehold

interest, in whole or in part, to Mobil. When the farm out well was drilled, Mobil was not in privity

with the School Board. A farmout does not create privity of contract between a lessor and a potential

assignee, such as Mobil, until the farmout obligations are met <u>and</u> the assignment is actually

executed. *Robinson*, 509 So.2d at 681 (no privity between mineral lessor and party who received

farmout). In the absence of contractual privity, the law is clear that the School Board does not have

a claim against Mobil for breach of contract. *Niland's Funeral Service, Inv. V. Stanley*, 684 So.2d

982, 984-85 (La. App. 1st Cir. 1996); *Rivnor Properties v. Herbert O'Donnell, Inc.*, 633 So.2d 735,

742 (La. App. 5th Cir. 1994); *Randall v. Lloyd's Underwriters at London*, 602 So.2d 790, 791 (La.

App. 4th Cir. 1992); *Impressive Builders, Inc. v. Ready Mix, Inc.* 535 So.2d 1344, 1346 (La. App. 5th

Cir. 1988).

Second, any claim which the School Board had for breach of the Southern Natural lease are long prescribed. "It is well-settled that the ten-year prescriptive period for [breach of contract actions] commend to run at the time of the breach." *Donald G. Lambert Contractor, Inc. v. Parish of Jefferson*, 700 So.2d 894, 897 (La. App. 5th Cir. 1997); *see also Phillip v. Home Insurance Co.*, 671 So.2d 943, 946 (La. App. 5th Cir. 1996) (same); *Loewer v. Texas Gs Transmission Co.*, 615 F.Supp. 1, 2 (W.D. La. 1984) (same); La. C.C. Art. 3499 (breach of contract actions subject to ten-year prescriptive period).   As noted above, the School Board granted new mineral leases on the entirety of the Property in 1964, 1971, 1985 and 1997. The School Board admits that it did not re-lease the Property while a prior lease was still in effect. As a result, the Southern Natural lease had expired by 1964, when the Property was leased to W.S. Rownd. Once the Southern Natural lease ended, any claim for its breach expired, at the latest, ten years later in 1974. See *St. Martin v. Quintana* at * (alleged obligation to fill in canals on leasehold based upon mineral lease arose when lease ended and therefore plaintiffs' claims prescribed ten years after mineral lease expired).   In addition, the School Board, was well aware of Section 16 erosion from oilfield canals by 1982. As a result, the School Board's breach of contract claims are prescribed.

The School Board's expected reliance on the doctrine of *contra non valentem* to cure the untimeliness of its breach of contract claims is unavailing. [Petition at ¶ 18]. The doctrine tolls the running of prescription when the cause of action is not known or reasonably knowable by the plaintiff. *K & M Enterprises of Slaughter, Inc. v. Richland Equipment Co., Inc.*, 700 So.2d 921, 924 (La. App. 1st Cir. 1997). But "*contra non valentem* will not except a plaintiffs' claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a

plaintiff will be deemed to know what he could by reasonable diligence have learned." *Ellender v. Goldking Production Co.*, 200 WL 829356, * 5 (La. App. 1st Cir. 2000) (emphasis added); *see also Schoen v. Walling*, 728 So.2d 982, 985 (La. App. 2nd Cir. 1999) (*contra non valentem* does not apply when plaintiff's ignorance is negligent or unreasonable); *Adams v. First National Bank of Commerce*, 644 S. 2d 219, 224 (La. App. 4th Cir. 1994) (same).

Under this standard, *contra non valentem* does not apply. As set forth above, the School Board was continually made aware of erosion in Section 16 lands due to oilfield canals after, at the latest, 1982 when it commissioned the T. Baker Smith Section 16 erosion study. The canal was open and obvious. There is no allegation that Mobil "hid" the canal from the School Board for forty years. In short, the alleged breach of contract – failure to fill in the canal when the Southern Natural lease ended – has been readily apparent for almost forty years. Furthermore, the School Board knew that the canal was not filled; as the Hebert report states, the canal made the Property more attractive for potential mineral lessees. As the Court noted it in *St. Martin v. Quintana Petroleum Corp.*, "it is not relevant when the plaintiff learned the extent of the damages caused by the alleged breach. Therefore, *contra non valentem* does not apply, and plaintiff's contract claim prescribed long before [it] filed this lawsuit." 1999 WL 232635 at *3.[4]

___

[4]     The School Board may seek to rely on *St. Martin v. Mobil Exploration & Production U.S. Inc.*, 224 F.3d 402 (5th Cir. 2000), in opposition to Mobil's prescription arguments. As here, the plaintiffs in that case were owners of marsh property in Terrebonne Parish. Under the terms of a canal servitude agreement, the defendants had dredged several canals on the property in 1966. *Id.* at 404. The canal servitudes – which remained in full operation and effect through the time the plaintiffs filed suit – imposed an ongoing obligation on the defendants to maintain and repair the canal banks. *Id.* at 409. The court awarded damages to the plaintiffs on the basis that the defendants had breached that obligation. *Id.* The Fifth Circuit affirmed, noting that "the district court based its finding of liability upon its interpretation of the canal servitude agreements," and the defendants' affirmative contractual duties were of an ongoing nature. *Id.* at n.9.

There is no such servitude agreements at issue in the present case. Accordingly, Mobil was not

## CONCLUSION

The School Board's tort and contract claims are prescribed. In addition, its breach of contract claims are defective as a matter of law due to the lack of contractual privity between Mobil and the School Board. As a result, summary judgment should be granted dismissing the School Board's claims against Mobil with prejudice.

Respectfully submitted,

**FRILOT, PARTRIDGE, KOHNKE & CLEMENTS, INC.**

**ROBERT B. McNEAL (Bar No. 14211)**
**MILES P. CLEMENTS (Bar No. 4184)**
**SHERI S. FAUST (Bar No. 26283)**
3600 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3600
Telephone: (504) 599-8014
Facsimile : (504) 599-8114

**Counsel for defendant, Exxon Mobil Corporation**

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing pleading has been served upon counsel of record fo all parties by facsimile transmission, hand delivery, by delivery service, delivery charges prepaid and properly addressed, or by U.S. Mail, postage prepaid and properly addressed, this __5__ day of __September__, 2001.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TERREBONNE PARISH** | § | |
| **SCHOOL BOARD** | § | |
| | § | **CIVIL ACTION NO. 00-310** |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **SECTION "B"** |
| | § | |
| | § | |
| **MOBIL OIL CORPORATION** | § | **MAGISTRATE 5** |
| | § | |
| **Defendant** | § | |

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to LR 56.1, defendant, Mobil Oil Corporation (hereinafter "Mobil") submits this statement of material facts as to which there is no genuine issue to be tried:

1) The property at issue, identified as Section 16, Township 18 South, Range 12 East ("Property"), is a Section 16 land owned by the State of Louisiana and managed by the Terrebonne Parish School Board ("School Board"), for the benefit of the parish's public school system.

2) The School Board is entitled to use Section 16 lands in Terrebonne Parish for educational purposes, including leasing them to generate revenues for educational purposes.

C:\DOCS\TPSB\SJ-STMT-UNDISPUTEDFACTS

3)   Southern Natural Gas Company ("Southern Natural") was party to an oil, gas and mining lease with TPSB regarding the Property dated December 17, 1957 (the "Lease") .

4)   In 1959, a Mobil predecessor, Magnolia Petroleum Company ("Magnolia") requested a "farm-out" on the Property from Southern Natural to drill a well.

5)   In late 1959, Mobil dredged a canal for the purpose of drilling a well on the Property and drilled a well that was a "dry hole".

6)   On December 24, 1959, Mobil plugged and abandoned the well.

7)   Southern Natural never assigned any interest in the lease to Mobil.

8)   After the well was plugged in 1959, neither Mobil nor any of its predecessors conducted any mineral-related activities on the Property.

9)   TPSB has re-leased the Property for oil and gas exploration and development at least four times since 1964.

10)  The School Board is not aware of any instances where the Property was leased for oil and gas exploration and development unless and until any prior mineral lease had expired or terminated.

11)  Prior to the filing of this lawsuit, no demand was made upon Mobil by the School Board to fill the canal.

12)  In 1989, Herbert Carreker was employed by the Terrebonne Parish School Board.  As of the time of his hiring, Mr. Carreker was aware of marsh erosion and that dredging oilfield canals can potentially result in erosion of marshlands.

13)  All copies of minutes of Terrebonne Parish School Board are true and accurate copies.

Respectfully submitted,

**FRILOT, PARTRIDGE, KOHNKE**
**& CLEMENTS, INC.**

_____
**ROBERT B. McNEAL (Bar No. 14211)**
**MILES P. CLEMENTS (Bar No. 4184)**
**SHERI S. FAUST (Bar No. 26283)**
3600 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3600
Telephone: (504) 599-8014
Facsimile : (504) 599-8114

**Counsel for defendant, Exxon Mobil Corporation**

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing pleading has been served upon counsel of record fo all parties by facsimile transmission, hand delivery, by delivery service, delivery charges prepaid and properly addressed, or by U.S. Mail, postage prepaid and properly addressed, this _5_ day of _September_, 2001.

_____

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TERREBONNE PARISH** | § | |
| **SCHOOL BOARD** | § | |
| | § | **CIVIL ACTION NO. 00-310** |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **SECTION "B"** |
| | § | |
| | § | |
| **MOBIL OIL CORPORATION** | § | **MAGISTRATE 5** |
| | § | |
| **Defendant** | § | |

## NOTICE

**TO:  TERREBONNE PARISH SCHOOL BOARD**
Through it s counsel of record:
Michael X. St. Martin, Esq.
Conrad S.P. Williams, III, Esq.
Joseph G. Jevic, III, Esq.
St. Martin & Williams (APLC)
Post Office Box 2017
Houma, Louisiana 70361-2017
- AND -
A. J. Gray, III, Esq.
Wade T. Visconte, Esq.
Post Office Box 1467
Lake Charles, Louisiana 70602-1467

**PLEASE TAKE NOTICE** that defendant, Mobil Oil Corporation, through undersigned

C:\DOCS\TPSB\SJ-NOTICE

counsel, will bring on for hearing its motion for summary judgment before the Honorable Ivan L.R.

Lemelle, United States District Judge, 500 Camp Street, New Orleans, Louisiana, on the ~~19th~~ *3rd* day

of ~~September~~ *October*, 2001 at 9:00 o'clock a.m. or as soon thereafter as counsel may be heard.  You are

invited to appear and take such part as may be proper in the premises.

Respectfully submitted,

**FRILOT, PARTRIDGE, KOHNKE
& CLEMENTS, INC.**

**ROBERT B. McNEAL (Bar No. 14211)
MILES P. CLEMENTS (Bar No. 4184)
SHERI S. FAUST (Bar No. 26283)**
3600 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3600
Telephone: (504) 599-8014
Facsimile : (504) 599-8114

**Counsel for defendant Mobil Oil Corporation**

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing pleading has been served upon counsel of

record fo all parties by facsimile transmission, hand delivery, by delivery service, delivery charges

prepaid and properly addressed, or by U.S. Mail, postage prepaid and properly addressed, this *5*

day of *September*, 2001.

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED