

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 SEP 19 PM 12: 14

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TERREBONNE PARISH SCHOOL BOARD** | § | **CIVIL ACTION NO. 00CV0310** |
| **VERSUS** | § | **SECTION: B** |
| **MOBIL OIL CORPORATION** | § | **MAGISTRATE: 5** |
| **FILED:** _____ | § | _____<br>**DEPUTY CLERK** |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
### MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT** through undersigned counsel, comes plaintiff Terrebonne Parish School Board, which submits the following memorandum in opposition to the Motion for Summary Judgment filed by Mobil Oil Corporation. ("Mobil").

### FACTS

In reviewing the documentation associated with section 16, Township 18 South, Range 12 East ("§16,T18S,R12E") the parties agree that on or about October 6, 1959, Mobil obtained a permit from the Louisiana Office of Conservation to drill the TPSB #1 Well. A location canal was dredged by Mobil in the southeast corner of §16,T18S,R12E to access the

___Fee_____
___Process___
X__Dktd____
__CtRmDep__
Doc.No. 83

proposed surface location of their well. The well was a dry hole and was plugged and abandoned on December 24, 1959; the canal was left in place. As Mobil notes, no mineral lease has been identified between TPSB and Mobil, and it would appear that Mobil conducted their activities pursuant to a farmout agreement[1] with TPSB's then mineral lessee, Southern Natural Gas Company ("SNG").

## LAW AND ANALYSIS

### Prescription does not run as to section sixteen lands:

Louisiana's school boards are the beneficial owners of section sixteen lands for which title is held in trust by the State of Louisiana. *State v. F.B. Williams Cypress Co., Ltd.,* 131 La. 62, 58 So. 1033 (La. 1912); *Ward v. South Coast Corp.,* 198 La. 433, 448; 3 So.2d 689, 694 (La. 1941); *Liner v. Terrebonne Parish School Board,* 519 So.2d 777, 778 (La. App. 1st Cir. 12/22/87); *writ denied,* 521 So.2d 1173 (La. 3/25/88) *cert denied,* 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (10/03/88). The school boards administer these public trust lands for the benefit of the school children of each parish. *Id.* Pursuant to Article Thirteen, Section Thirteen of the Louisiana Constitution and the Louisiana Supreme Court's decision in *F.B. Williams,* actions for damages to Section Sixteen Lands are not affected by prescription. The Louisiana Constitution provides that "[p]rescription shall not run against the state in any civil matter, unless otherwise provided in this constitution or expressly by law." La. Const. Art. 13, §13; see also *F.B. Williams,* 131 La. at 71, 58 So. at 1036 (setting forth the identical text of Article 193 of the Constitution of 1898). In *F.B. Williams,* the Supreme Court was faced with a damage claim on Sixteenth Section land resulting from a purported trespass that

---

[1] A farmout agreement is a "common form of agreement between operators, whereby a lease owner not desirous of drilling at the time agrees to assign the lease, or some portion of it to another operator who is desirous of drilling the tract." *Molero v. Bass,* 478 So.2d 929 (La. App. 4th Cir. 1985).

occurred more than a year prior to filing suit. With regard to sixteenth section lands, the court stated that although,

> school boards which are nearer to and more directly interested in the sixteenth sections in their respective parishes shall aid the state in the execution of her trust[; t]he proposition that the rule of prescription established by the Constitution does not apply to [lands held by] the state in her capacity as trustee is untenable. Everything that the state holds in her capacity as sovereign she holds as trustee; and…the rule in question does…apply for the protection of land donated and held in trust for the public schools….

*F.B. Williams,* 131 La. at 72, 58 So. at 1037. Accordingly, the court allowed a claim for damages, which would otherwise have prescribed, to proceed on the basis that damage claims related to section sixteen lands, which lands are held in trust for the benefit of the public schools, are exempt from prescription. *Id.* Although some one hundred years have passed since the enactment of the Constitution of 1898 and almost ninety years since the Supreme Court's pronouncement in *F.B. Williams*, little has changed with regard to the prohibition against prescription and the State's handling of section sixteen lands, what held true in 1912 applies today; prescription does not run as to actions affecting section sixteen lands.

### A farmout agreement is a right that invokes the mineral code's continuing obligation to restore the surface to its original condition:

Mobil asserts that it is entitled to summary judgment because TPSB has failed to demonstrate the existence of a contractual relationship with Mobil, as Mobil was only a party to a farmout agreement with SNG and the well drilled pursuant to said agreement was a dry hole.

The lessee's interest in a mineral lease may be assigned in whole or in part. La.R.S. §31:127. The key term in article 128 is "interest." Mobil argues that it never acquired an "interest" in the TPSB lease with SNG, and thus never became directly responsible to TPSB. However, the term

"interest" is not as narrowly defined as Mobil may claim. The fundamental right granted by a mineral lease to a lessee is the right to go upon the lessee's property and drill for minerals.[2] It follows that the lessee's right to drill for minerals, is an interest that may be assigned "in part." "To the extent of the *interest* acquired, an assignee or sublessee acquires the *rights* and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessee's obligations." La.R.S. §31:128 (emphasis added). In this case, to the extent that Mobil acquired the "interest" or "right" to go on TPSB's property and drill for oil, Mobil is an assignee that is directly responsible to the original lessor (TPSB) for performance of the lessee's obligations under the terms of the lease. Consequently, since Mobil acquired the "interest" or "right" of entering the property and drilling for minerals, it is responsible to TPSB for any damage caused by its drilling operations. Articles 122 and 128 of the Mineral Code do not mandate that a party that obtains the right to drill for minerals under a mineral lease must drill a well capable of production in order to become an "assignee" responsible for restoration of the affected property.

Mobil is an "assignee" to the extent that it acquired the "interest" or "right" to drill on TPSB's property.[3] If Mobil had drilled a well capable of production, then it would have an additional "interest" in the form of an assignment of royalties. To conclude that a party that goes on to a lessor's property and drills for minerals is only an "assignee" liable for damages caused by the drilling operations if the well drilled produces minerals would result in the party acquiring rights under a farmout agreement also obtaining a license to destroy a landowner's property without

---

[2] Article 122 of the Mineral Code provides in pertinent part: "A mineral lease is a contract by which the lessee is granted the right to explore for and produce minerals."

[3] A "right" and "interest" are not necessarily separate terms of art under the mineral code. Rather, for example, an overriding royalty "interest" is a "right" that can be enforced if a lessee fails to pay royalties. Thus, "interest" is a term subsumed within the term "right," and the two terms are synonymous.

incurring liability for damages caused as long as the well is a dry hole.

Consequently, a farmout agreement conveys two separate types of "interests." First under the farmout agreement, Mobil obtained an "interest" in the TPSB lease by obtaining the right to drill. Second, under the farmout agreement, if Mobil had drilled a well capable of production, then Mobil would be entitled to the assignment of a royalty "interest." Concluding that Mobil acquired an interest to drill for minerals from the original lessee, Mobil became an "assignee" that acquired the "rights and powers of the lessee" and became "responsible directly to the original lessor for performance of the lessee's obligations" arising out of the drilling operations. See La. Min. Code art. 128.

**The obligations of the mineral code are continuing obligations:**

Incorporated into every mineral lease by operation of the Louisiana Mineral Code (La.R.S. §31:1 *et seq.*) are various covenants, including the obligation of a mineral lessee to restore the leased premises as near as is practical to its original condition. La.R.S. §31:122; see also La. Civ. Code arts. 2719 & 2729. *Magnolia Coal Terminal v. Phillips Oil Co.*, 576 So.2d 475, 483-84 (La. 1991), *rehearing denied*; *Edwards v. Jeems Bayou Production Co.*, 507 So.2d 11 (La.App. 2 Cir. 1987). *Broussard v. Waterbury,* 346 So.2d 1342 (La.App. 1977), *writ denied*, 350 So.2d 674. The terms of the mineral lease may impose specific duties of restoration on the lessee, but even absent such language, the covenant to reasonably restore the surface is written into the mineral lease as a matter of law. *Magnolia Coal*, 576 So.2d at 483-84; *Edwards,* 507 So.2d 11. *Broussard,* 346 So.2d 1342. A mineral lessee has a *continuing obligation* to maintain or restore the leased premises as near as is practical to its original condition, subject to the lessee's rightful use thereof, and where the lessee has damaged the land, it is his duty to appropriately remedy the condition brought on by his use of the lease.

*Magnolia Coal,* 576 So.2d at 483-84; *Edwards,* 507 So.2d 11. *Broussard,* 346 So.2d 1342; *Smith v. Schuster,* 66 So.2d 430 (La. App. 2d Cir. 1953). See also La.R.S. §31:122; La. Civ. Code arts. 2719 & 2729. See also, La.R.S. §31:122; see also La. Civ. Code arts. 2719 & 2729. The lessee's obligation to restore the surface of the leased premises as near as practical to original condition is a *continuing obligation* that runs with the land. See comments to La.R.S. 31:122; See also McCollam, M. John, *A Primer for the Practice for Mineral Law Under the New Louisiana Mineral Code,* 50 Tul. L.Rev. 729, 811 (1976); *Magnolia Coal,* 576 So.2d at 483-84.[4] A landowner's right to recover damages because of a defendant's failure to honor its *continuing obligation* to restore is a property right arising out of the original mineral lease that attaches to the property. *Magnolia Coal,* 576 So.2d 475.

Accordingly, a mineral lessee may be held responsible (1) under the terms of the lease contract to restore the property pursuant to any provisions in the lease, (2) as a matter of obligation imposed by statute under a lease agreement to reasonably restore the leased premises to a condition consistent with its pre-operation condition; and (3) as a matter of fault pursuant to article 2315 for damages resulting from unreasonable and unnecessary use of the land outside of the lease terms or the implied covenant for surface restoration.

---

[4] Commentators have noted that "the implied covenant is a fiction, used like other fictions by the law in order to achieve a desirable result." Maurice Merrill, Covenants Implied in Oil and Gas Leases s 7, at 27 (2d ed. 1940 & 1964 Supp.); Charles J. Meyers & Steven M. Crafton, The Covenant of Further Exploration -- Thirty Years Later, 32 Rocky Mtn. Min. L. Inst. 1-1 (1986). It is not the agreement of the parties that imposes the obligations but the operation of law. Merril, supra, s 7, at 27 (Emphasis added.)
In implementing implied covenants, the Courts should "consider the fact that the conditions of the present are not those of the formative period of the implication of terms in oil and gas leases. An environmental ethic has largely displaced a development-at-all-costs mentality. Wise stewardship of resources should be the operative concern in defining the prudent operator rather than making the quick buck." Patrick H. Martin, *Implied Covenants in Oil and Gas Leases, Past, Present & Future,* 33 Washburn L.J. 639, 669 (Summer 1994).

As has been set forth above, the mineral code's obligation to restore the leased premises is a continuing obligation. When a breach of a continuing obligation is involved, prescription does not commence to run until the breach is abated, and plaintiff's knowledge of the breach is irrelevant. *Estate of Patout v. City of New Iberia*, 97-1097, p.9 (La. App. 3rd Cir. 3/6/98), 708 So.2d 526, 531; *affirmed*, 98-0961 (7/7/99), 738 So.2d 544; *Bustamento*, 607 So.2d at 537; *Pearson v. Hartford Accident & Indemnity Co.*, 281 So.2d 724 (La.1973); *Strata v. Patin*, 545 So.2d 1180, 1189 (La.App. 4th Cir.), cert. denied, 550 So.2d 618 (La.1989); See also *Chaney v. State Through Dept. of Health and Human Resources*, 432 So.2d 256, 259-60 (La.1983) (applying similar rule regarding date on which it was alleged plaintiff acquired knowledge of tortious act). Under Louisiana jurisprudence, prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished; of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted. *Bustamento v. Tucker*, 607 So.2d 532, 537, (La. 1992); *Lima v. Schmidt*, 595 So.2d 624, 629 (La.1992) (collecting cases).

Accordingly, TPSB has a claim against Mobil for the restoration of its property. As has been set forth, claims for damages to section sixteen lands are imprescriptible. Alternatively, should this court deem that a prescriptive period should apply, because the obligation to restore that is imposed by the Mineral Code is a continuing obligation, Mobil's failure to honor that obligation is a continuing breach which interrupts prescription until said obligation is satisfied.

### Irrelevance of "evidence" submitted by Mobil in support of summary judgment:

Mobil's exhibits can be grouped into seven (7) distinct groups of documents: (1) documents involving sections other than §16,T18S,R12E; (2) documents involving loss of mineral revenues to the State upon conversion of section 16 land to State owned water bottoms; (3) a document related to

the location of section sixteen lands; (4) an undefined request to look into the "matter of mitigation"; (5) a proposal by Coastal Environments, Inc. regarding the types of services they offer; (6) matters related to the Penchant Basin Resource Plan; and (7) statements made by counsel with regard to potential litigation on another section. The exhibits to be discussed below neither create nor resolve any genuine issues of material fact.

**Documents involving sections other than §16,T18S,R12E**

The first group of exhibits are those involving sections other than §16,T18S,R12E, which include exhibits 4 and 5. Exhibit 4 is a newspaper clipping regarding activities on §16,T19S,R16E which includes the northeastern shore of Lake De Cade and is some twenty four miles to the southeast of §16,T18S,R12E. Exhibit 5 is a study by T. Baker Smith which involves a study of five section sixteens in the southern half of Terrebonne Parish. (20/13, 20/14, 20/15, 20/16 and 22/15) (A location map is attached hereto as exhibit "A" for the court's reference). These items in no way relate to activities on §16,T18S,R12E.

**Documents involving loss of mineral revenues to the State upon conversion of section 16 land to State owned water bottoms**

A plain reading of the minutes attached by Mobil as Exhibits 6, 7 and 8 demonstrate that TPSB was concerned at the time with a dispute between TPSB and the State over the conversion of section sixteen lands to state owned water bottoms. As an aside, the T. Baker Smith report attached as exhibit 5 was prepared in connection with these matters. (See Mobil exhibit 7). TPSB also directs this court to La.R.S. 41:642 which was added in 1982 to preserve the School Boards' interests in lands converted to State owned water bottoms upon submission of "proof of the extent of erosion or subsidence which may occur after the effective date of this Act." Mobil has failed to demonstrate the

relevance and materiality of these exhibits, no inferences can be drawn from these exhibits with regard to any activities on §16,T18S,R12E.

**Document related to the location of section sixteen lands**

Mobil attaches as exhibit 9 a document entitled "Preliminary Search for Section 16 Lands." A close inspection of this document reveals that the purpose and intent was to locate the various section sixteens claimed by TPSB on a map. Although reference is made to a "land loss map," no explanation is provided as to what if any information was provided with regard to the map other than its inclusion as a tool with which to view the location of the section sixteens. Furthermore, the description as to "% Land" is meaningless as it at best can only reflect a comparison of the land/water ratio on a particular section at a particular point in time. Accordingly, Mobil's exhibit 9 is meaningless in and of itself.

**Documents related to an undefined request to look into the "matter of mitigation"**

Exhibits 10, 11 and 12 each involve a discussion by TPSB regarding an intent to look into the "matter of mitigation." However, in and of themselves, these exhibits are meaningless. Without any explanation as to what type of "mitigation" was being discussed and on which properties the "mitigation" would involve, it is impossible to draw any conclusions as to the relevance of these exhibits.

**Documents related to a proposal by Coastal Environments, Inc. regarding the types of services they offer**

Exhibits 13, 14 and 15 relate to a presentation made by Coastal Environments, Inc. regarding the types of services they could offer TPSB. However, a clear reading of said exhibits clearly reveals that the nature and scope of the work as proposed was speculative and that investigative work would

have to be conducted to determine what future course of action would be necessary. The exhibits related to the Coastal Environment, Inc. proposal clearly evidence the speculative nature of said proposal and offer nothing in support of Mobil's motion.

**Matters related to the Penchant Basin Resource Plan**

Exhibits 16 and 17 both relate to the Penchant Basin Resource Plan. Although TPSB received a copy of exhibit 16, it is important to note that that exhibit was prepared by the USDA Soil Conservation Service and was distributed and/or made available to potentially affected landowners such as TPSB. Although containing information of a general nature, exhibit 16 in no way specifically addresses any concerns as to the section involved herein. Moreover, exhibit 17 indicates that "the adjacent marsh area appears stable with no obvious sign of accelerated erosion." How either of these exhibits evidence TPSB's knowledge of erosion affection this particular section is incomprehensible. Accordingly, said exhibits cannot support Mobil's motion.

**Statements made by counsel with regard to potential litigation on another section**

Mobil goes to great lengths to overemphasize and distort those comments made by Michael X. St. Martin to the TPSB in meetings prior to the filing of this suit. First and foremost, the transcript attached is not an official TPSB document and was not provided in the course of discovery. Second, as this court is aware, Michael X. St. Martin is an attorney, not an expert in the creation, deterioration or restoration of marshes and as is plainly indicated by the exhibits attached by Mobil, Mr. St. Martin's comments are made with respect to section 16, Township 18 South, Range 17 East, which is not §16,T18S,R12E, the section involved herein. Third, Mr. St. Martin's comments are made in the context of "if this was indicative of damages throughout Section 16 lands" and was not the grand pronouncement set forth by Mobil that the damages on an unrelated section 16



are indicative of damages on another section 16. As this court is clearly capable of taking judicial notice, the cause and extent of damage on any particular tract of land will necessarily be determined by those facts and circumstances unique to that particular section and what happens in another area is not necessarily conclusive as to the cause and extent of damage on §16,T18S,R12E.

## CONCLUSION

In conclusion, TPSB submits that Mobil has failed to offer evidence demonstrating that it did not acquire an interest in the mineral lease affecting TPSB property and has failed to demonstrate that TPSB's claim has prescribed. Moreover, pursuant to the Louisiana Constitution and long established Louisiana Supreme Court precedent, actions for damages to section sixteen lands are imprescriptible. Accordingly, Mobil's motion for summary judgment should be denied.

RESPECTFULLY SUBMITTED,

_____
MICHAEL X. ST. MARTIN (Bar # 12354)
JOSEPH G. JEVIC, III (Bar # 23145)
**ST. MARTIN & WILLIAMS**
P.O. Box 2017
Houma, Louisiana 70361
Telephone: (985) 876-3891

A. J. GRAY, III (Bar # 6253)
WADE T. VISCONTE (Bar # 24734)
**THE GRAY LAW FIRM (APLC)**
P.O. Box 1467
Lake Charles, LA 70602-1467
Telephone (337) 494-0694

**Attorneys for Plaintiffs-Applicants**
Terrebonne Parish School Board ("TPSB")

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to opposing counsel by ~~fax and/~~or placing same in the United States Mail, postage prepaid on the 18th day of ~~July,~~ Sept 2001. fedex

_____

**TERREBONNE PARISH SCHOOL BOARD**

SCALE
9    0    9
MILES

EXHIBIT A

1993 LANDSAT TM INDEX MAP