# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

No. 01-31190

D.C. Docket No. 00-CV-310-B



**U.S. COURT OF APPEALS**

# FILED

NOV 1 3 2002

CHARLES R. FULBRUGE III
CLERK

TERREBONNE PARISH SCHOOL BOARD

Plaintiff - Appellant

v.

MOBIL OIL CORPORATION

Defendant - Appellee

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans.

Before SMITH and BENAVIDES, Circuit Judges, and ENGELHARDT*,
District Judge.

J U D G M E N T

This cause was considered on the record on appeal and was
argued by counsel.

It is ordered and adjudged that the judgment of the District
Court is affirmed.

IT IS FURTHER ORDERED that plaintiff-appellant pay to
defendant-appellee the costs on appeal to be taxed by the Clerk of
this Court.

ISSUED AS MANDATE: DEC 0 5 2002

* District Judge of the Eastern District of Louisiana,
sitting by designation.

A true copy
Test
Clerk U.S. Court of Appeals, Fifth Circuit
By _____
Deputy
New Orleans, Louisiana    DEC 0 5 2002

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

*OO-CV-∂D-B*

No. 01-31190

U.S. COURT OF APPEALS
**FILED**

NOV 1 3 2002

CHARLES R. FULBRUGE III
CLERK

TERREBONNE PARISH SCHOOL BOARD

Plaintiff-Appellant

v.

MOBIL OIL CORPORATION

Defendant-Appellee

----------------------------------

Appeal from the United States District Court
for the Eastern District of Louisiana

----------------------------------

Before SMITH and BENAVIDES, Circuit Judges, and ENGELHARDT, District Judge.*

KURT D. ENGELHARDT, District Judge:

Plaintiff, the Terrebonne Parish School Board ( "School Board"), as royalties holder of a Section 16 tract, appeals the district court's dismissal of its diversity-based delictual and contractual action against the defendant, Mobil Oil Corporation ("Mobil"), on statute of limitation grounds. The School Board argues that its claims against Mobil are imprescriptible under Louisiana law, and thus the district court erroneously concluded that the expiration of Louisiana's one-year and ten-year liberative prescription periods applicable to tort and contract claims, respectively, serve to bar the School Board's claims for damages and restoration of Section 16 land. Concluding that the State of Louisiana's constitutional immunity from prescription does not enure to the benefit of the School Board suing solely in its capacity as royalty owner and not in the name of the state, we affirm for the following reasons.

---

*District Judge of the Eastern District of Louisiana, sitting by designation.

## I. FACTS AND PROCEEDINGS

This case involves a suit for restoration and money damages arising out of the erosion and diminishment of a Section 16 tract owned by the State of Louisiana and managed by the School Board. This dispute centers on an approximately 640 acre tract (§16,T18S,R12E/TRACT) in western Terrebonne Parish, Louisiana.  It is one of many Section 16 tracts managed by the School Board located in Terrebonne Parish's coastal marsh.   The State's "Section 16" lands are public lands consisting of the sixteenth sections of various townships that parish school boards are entitled to use to support education. The School Board leased this particular property for various purposes, including oil and gas activities.

*Via* three-year lease dated December 12, 1957,  the School Board let the subject 640 acre tract to Southern Natural Gas Company ("SNG") for an initial payment of $38,834.91.   The lease specifically granted to SNG and its assignees the right to dredge canals on the property and to perform other works conducive to oil and gas exploration.  The lease did not require that SNG refill any canals upon termination of the lease.

Although the School Board's contract claim is labeled as one for breach of a "servitude, right-of-way(s) and/or mineral lease(s),"[1] the School Board admits that it has no contract in the nature of a servitude, right-of-way, or mineral lease with Mobil, or its predecessor Magnolia Petroleum Company (hereinafter referred to as "Mobil"). Rather, the basis of the School Board's contractual claim for erosion damage is a farm-out agreement, by and between SNG and Mobil.[2]   The School

---

[1]Petition for Damages, at para. 16.

[2]Farm-out agreements are frequently utilized in the petroleum industry in instances where the owner of a mineral lease is unable or unwilling to drill a lease nearing expiration but is willing to assign an interest to one willing to assume the drilling obligations and save the lease from expiring.

2

Board claims SNG's farm-out agreement with Mobil somehow renders Mobil liable under SNG's 1957 mineral lease with the School Board.

Mobil obtained a permit from the Louisiana Conservation Office to drill the well. Pursuant to the 1959 farm-out agreement with SNG, Mobil dredged a canal in the southeast corner of the tract to access the surface location of School Board Well #1. Mobil's drilling and all other activities associated with Well # 1 ceased when the well was completed. On December 24, 1959, School Board Well #1 -- a dry hole on §16,T18S,R12E/TRACT -- was plugged and abandoned.

Drilling and well-completion operations associated with a well-site abandoned over 42 years ago form the basis of the School Board's claims against Mobil. The School Board maintains that the existence of the accessory canal, which was left intact, has contributed to the erosion of the land and the demise of the marshland habitat.

The summary judgment record demonstrates that since the early 1980's, the School Board acquired actual knowledge of erosion damage caused by oil field canals, albeit erosion damage to Section 16 lands generally, and not necessarily to the particular tract at issue. In May, 1981, the School Board reconsidered a request to dredge a canal on some of its marsh property, fearing that it would make the erosion problem worse. Soon thereafter, the School Board hired an engineering firm to prepare a survey and memorialize in report form the findings relative to the problematic erosion of Section 16 lands. Indeed, the stated purpose of T. Baker Smith's January, 1982 preliminary erosion study was "to assist the Terrebonne Parish School Board and residents of Terrebonne Parish to become aware of the rate of erosion occurring within Terrebonne Parish."[3] The

---

[3]January 13, 1982 Preliminary Erosion Study of Section 16 Lands (School Board Properties) in Terrebonne Parish, Louisiana, prepared by T. Baker Smith & Son, Inc., at p. 5. [Rec., Vol. III of IV at Bates Stamp 665].

3

School Board intended that the January 13, 1982 erosion study of Section 16 lands "serve as a basis for approximating land loss rates throughout the parish."[4]  Summarizing the causes of erosion affecting all of Terrebonne Parish's Section 16 lands, T. Baker Smith, Inc.'s 1982 report concluded that "direct, man-influenced causes" included "(1) the breakup of fresh marsh and flotant because of increased salinities introduced by navigation, drainage, and petroleum-related canals, [and] (2) the replacement of land area by canals ...."[5]  Hence, on August 17, 1982, the School Board passed a resolution that acknowledged the erosion problem.[6]

In February 1984, the environmental consulting firm Coastal Environments prepared a listing of Section 16 lands for the School Board, specifically referring to a 1955-1978 Land Loss map of Terrebonne Parish.[7]  Coastal Environment's February 1984 Report identified thirty-six Title 16 Lands on the land loss map, one being the instant tract (T18S-R12E Hackberry Bayou).[8]  On July 31, 1985, the School Board's Section 16 Lands Committee considered hiring Coastal Environments to address the mitigation issue,[9] but subsequently decided to hold the issue in abeyance, and did not

---

[4]*Id.* [Rec., Vol. III of IV at Bates Stamp 665].

[5]*Id.* [Rec., Vol. III of IV at Bates Stamp 668].

[6]August 17, 1982 Resolution of the Terrebonne Parish School Board [Rec., Vol. III of IV at Bates Stamp 723].

[7]*See* Preliminary Search for Section 16 Land dated February 1984, prepared by Coastal Environments, Inc. for Terrebonne Parish School Board [Rec., Vol. III of IV at Bates Stamp 725].

[8]*Id.* [Rec., Vol. III of IV at Bates Stamp 726-727].

[9]*See* Minutes of Proceedings of Terrebonne Parish School Board dated August 6, 1985 [Rec., Vol. III of IV at Bates Stamp 741-742].

4

hire the firm.[10]

On April 21, 1993, Coastal Environments submitted a Section 16 lands management proposal suggesting a partial contingency fee arrangement in return for its assistance quantifying damages for restoration of areas affected by development of the Section 16 land. Coastal Environment's plan for a base-line study contemplated an evaluation and report on each Section 16 tract individually.[11]

In 1994, the School Board received the plan from the USDA Soil Conservation Service to manage land that included seventeen Section 16 tracts in Terrebonne Parish, including the land at issue herein (T18S-R12E). This plan again acknowledged "manmade changes which have altered the hydrology of the basin [include] . . . the construction of extensive oilfield canal networks in the interior marsh...."[12]

The School Board hired Morris P. Hebert, Inc. ("Hebert") to determine whether the plan would provide for closing any canals on its Section 16 lands, including the subject 640 acre tract.[13] Regarding the particular tract at issue (T18S-R12E), Hebert reported to the School Board that the property's current mineral lessee, Pennzoil, objected to closing any canal on the tract, including the

---

[10]See Minutes of Proceedings of Terrebonne Parish School Board dated December 3, 1985 [Rec., Vol. III of IV at Bates Stamp 750-751]; School Board's Correspondence to Coastal Environments dated December 4, 1985 [Rec., Vol. III of IV at Bates Stamp 759].

[11]See Coastal Environment's Correspondence dated April 21, 1993 with attached Porposal to Assist the School Board in the development of a management plan for Section 16 properties. [Rec., Vol. III of IV at Bates Stamp 762-764].

[12]Penchant Basin Resource Plan Draft dated June 1994 [Rec., Vol. III of IV at Bates Stamp 778]; see also Report of Penchant Basin Resource Plan Sixteenth Section Evaluation prepared by Morris P. Hebert, Inc., dated April 12, 1995, Table of Contents at Tab D (specifically referring to Section 16 (T18S-R12E)) [Rec., Vol. III of IV at Bates Stamp 780].

[13]Id. [Rec., Vol. III of IV at Bates Stamp 781].

5

canal at issue in this case.[14]  In addition, Hebert instructed the School Board that:

> Although there is [sic] no active oil and gas operations on the property at this time,
> the existing well canal is an attractive feature for future operations.  The existing
> canal, trenasses, and pond are being used for recreational and commercial hunting
> and fishing activities.  Closure of the location canal in the Southeast quarter (SE 1/4)
> of the section and the trenasses would significantly affect its usefulness to the present
> and future lessees.  However, because access can be gained to the pond from the
> southerly trenasse off the location canal, closure of the northerly trenasses would not
> appear to cause significant impact to the section.  Closure of the northerly trenasse
> would curtail the large volume of water moving across the section through the pond
> and *would eliminate the aforementioned scouring and channelization.* Approximately
> $2,650.00 in revenues from the oil and gas lease is expected in fiscal year 1995-1996
> with the hunting and trapping lease earning the Board $3,800.00 annually until
> 5/31/98.[15]

In conclusion, Hebert advised the School Board that "[a]ny canal or waterway closure which affects

leaseholder access to their lease could jeopardize the viability of the property and hence the income

the Board."[16]  Despite notification of effects of *scouring* and *channelization* due to the existence of

the *location canal* on the subject tract (§16T18S-R12E), the School Board took no action to close

the canal.

In August 1996, the School Board was again informed that it could file an action to recover

erosion-related damages allegedly caused by oilfield canals.  Despite the references to the possibility

of a "monstrous amount of damage,"[17]  and an offer of assistance in any such litigation, the School

Board still did not respond.  It was not until March 1997, when the mineral lessee LLOG Exploration

--------

[14]*Id.* [Rec., Vol. III of IV at Bates Stamp 783].

[15]*Id.* (emphasis added) [Rec., Vol. III of IV at Bates Stamp 783].

[16]*Id.* [Rec., Vol. III of IV at Bates Stamp 790].

[17]Transcript of Proceedings of School Board Finance, Insurance and Section 16 Lands
Committee [Rec., Vol. III of IV at Bates Stamp 796-797].

6

Company's lease terminated, that the School Board commissioned an inspection of the subject 640 acre tract for environmental damage. *Via* report dated March 27, 1997, Malcolm Poiencot issued his findings to the School Board, replete with photographs of the subject canal and an opening at the end of the canal where "erosion" allegedly had occurred.[18] The School Board took no action against LLOG or any other entity in response to the report.

Over two years later and solely in its own name "as owner of all mineral royalties on Section 16, Township 18 South, Range 12 East, Terrebonne Parish,"[19] the School Board filed a petition for damages against Mobil in the Thirty-Second Judicial District Court for the Parish of Terrebonne, Louisiana, alleging both tort and contract claims with respect to the Section 16 tract. The State of Louisiana was not named in any capacity and was never made a party to the proceedings. After removing the case to the Eastern District of Louisiana, Mobil filed a motion for summary judgment asserting the affirmative defense of liberative prescription as to the plaintiff's delictual claims, *inter alia*, and the absence of privity necessary for contractual liability vis a vis the School Board.

The School Board's chief argument in opposition to the motion was that its claims -- because they relate to Section 16 lands held in trust by the State of Louisiana -- come within the purview of the section of the Louisiana state constitution which prevents prescription from running against the State.[20] Additionally, the School Board contended that SNG's farmout agreement recasts Mobil as

---

[18]*See* Correspondence of School Board contractor Malcolm Poiencot, dated March 27, 1997 [Rec., Vol. III of IV at Bates Stamp 813-814].

[19]*See* Petition for Damages [Rec., Vol. III of IV at Bates Stamp 805].

[20]*See* Plaintiff's Memorandum in Opposition to Motion for Summary Judgment (citing LA CONST. art. 12 § 13 and *State v. F.B. Williams Cypress Co., Ltd.,* 131 La. 62, 58 So.1033, 1037 (La. 1912), *amended*, 61 So. 988 (1913)(amending judgment only to correct mathematical error in judgment amount) [Rec., Vol. IV of IV at Bates Stamp 995-996].

an assignee under the SNG/School Board mineral lease, rendering Mobil liable for failure to restore the property pursuant to the terms of the lease, and prescription interrupted as long as the continuing obligation remained unsatisfied.[21] Finally, the School Board argued that the documents filed and made part of the summary judgment record were not sufficient to establish knowledge of erosion related damages with respect to the subject tract, and thus prescription had not commenced to run, and that in any event the Louisiana doctrines of *contra non valentem* and continuing tort operate to suspend prescription in this case. However, the School Board did not dispute the facts that: (1) there was no mineral lease by and between the School Board and Mobil identified; (2) there was no evidence of an assignment of any interest in the SNG/School Board mineral lease to Mobil; (3) Mobil's activities on the tract were pursuant to a farmout agreement with the School Board's mineral lessee SNG; and (4) Mobil's activities on the subject tract ceased on December 24, 1959, when it plugged and abandoned the dry hole, leaving the accessory canal intact.[22] Additionally, the record is clear that at no time was the district court apprised of the issue that the School Board only now presses for the first time on appeal, that the state's immunity enures to the benefit of the School Board in this case as a function of Louisiana's law of solidary obligations and its status as a solidary obligee with the state.[23]

---

[21]*See id.* (citing the Louisiana Mineral Code, 1974 La. Acts No. 50 (effective January 1, 1975)) [Rec., Vol. IV of IV at Bates Stamp 999-1000].

[22]*See* School Board's Memorandum in Opposition to Motion for Summary Judgment [Rec., Vol. IV of IV at Bates Stamp 995].

[23]The School Board contends on appeal that exemption from prescription is a by-product of solidarity because under the applicable law, any act that interrupts prescription for one of several solidary obligees benefits all other solidary obligees. *See* Brief of Plaintiff-Appellant Terrebonne Parish School Board, at pp. 13-14 (*citing* LA. CIV. CODE ANN. art.1793 (West 1987)).

The district court granted Mobil's motion, dismissing all of the School Board's claims as time-barred. The district court specifically held that: (1) the School Board's tort and contract claims are prescribed, pursuant to La. Civil Code art. 3492's provision of one-year liberative prescription for delictual actions, and La. Civil Code art. 3499's provision of ten-years liberative prescription for contractual actions; and (2) the School Board can find no shelter under Louisiana's constitutional provision which suspends the running of prescription against the state in all civil matters. *See* LA. CONST. art. 12 § 13. The district court did not address Mobil's alternative ground for dismissal of the School Board's breach of contract claims directly against Mobil – that is, the absence of contractual privity on account of the complete failure of proof with respect to the existence of a contract with Mobil.

The School Board now appeals the district court's ruling granting summary judgment on the basis of prescription.

## II.  ANALYSIS

### A.  Standard of Review

We review the district court's grant of summary judgment decision *de novo*, applying the same standard on appeal that is applied by the district court. *Auguster v. Vermillion Parish School Board*, 249 F.3d 400, 401 (5th Cir. 2001). Summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 635 (5th Cir. 2002). The moving party bears the burden of identifying an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether summary judgment is appropriate, all of the evidence introduced and all of the factual

9

inferences from the evidence are viewed in a light most favorable to the party opposing the motion and all reasonable doubts about the facts should be resolved in favor of the nonmoving party. *Boston Old Colony Ins. v. Tiner Associates Inc.,* 288 F.3d 222, 227 (5th Cir. 2002).

With respect to issues on which the movant carries the ultimate burden of persuasion, evidence must be adduced supporting each element of the defense and demonstrating the lack of any genuine issue of material fact with regard thereto. *See Rushing v. Kansas City So. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.), *cert. denied,* 528 U.S. 1160 (2000). Ordinarily, the party pleading prescription bears the burden of proving that the plaintiff's claims have prescribed. However, once it is shown that more than a year has elapsed between the time of the tortious conduct and the filing of a tort suit, the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription, utilizing one of any number of legal constructs including but not limited to the doctrine of *contra non valentem* and the theory of continuing tort. *See In re Moses,* 788 So. 2d 1173, 1177-78 (La. 2001); *Stett v. Greve,* 810 So. 2d 1203, 1208 (La. App. 2nd Cir. 2002); *Strata v. Patin,* 545 So. 2d 1180, 1189 (La. App. 4th Cir.), *cert. denied,* 550 So. 2d 618 (La. 1989). A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Geoscan, Inc. of Texas v. Geotrace Techs., Inc.,* 226 F.3d 387, 390 (5th Cir. 2000). Questions of law are reviewed *de novo. Mowbray v. Cameron County, Tex.,* 274 F.3d 269, 278 (5th Cir.), *cert. denied,* 122 S. Ct. 1912 (2002). Notwithstanding the foregoing, we may affirm the district court's decision on any ground supported by the record, even if it was not the basis for the judgment. *United States ex rel. Cal's A/C and Electric v. The Famous Construction Corporation,* 220 F.3d 326, 329 (5th Cir. 2000).

10

## B. Constitutional Immunity from Prescription

The School Board's defense to the plea of prescription is based upon the maxim *nullum tempus occurrit regi* as embodied in the Louisiana state constitution and its application to the School Board's claims in its own right against Mobil with respect to Section 16 (T18S-R12E). *See* LA. CONST. art. 12, § 13 ("Prescription shall not run against the state in any civil matter, unless otherwise provided in this constitution or expressly by law."). The School Board invokes the mantra of the aforesaid constitutional immunity under the rationale that the subject Section 16 tract is owned by the state and administered by the School Board to benefit public education. Plaintiff contends that the district court's judgment is inconsistent with controlling jurisprudence in *State through Department of Highways v. City of Pineville*, 403 So. 2d 49 (La. 1981), and thus prescription cannot run notwithstanding the fact that the property is administered by the School Board, a body politic capable of suing and being sued in its own right. Noting at the outset that the School Board's appeal does not concern any claim that the State of Louisiana may have in any capacity, much less as the owner of the Section 16 land at issue, and that the School Board filed suit against Mobil solely in its capacity as royalty owner and not in the name of the state, we affirm the judgment of the district court under the circumstances aforestated that the School Board claims (*i.e.*, claims in own right) are not exempt from prescription.

Here, we are faced with both a clear statutory framework applicable to the claims of the School Board with respect to restoration of Section 16 land when title is in the name of the state and a number of Louisiana Supreme Court decisions that refuse to apply the state's constitutional immunity from prescription when the suit is not brought by or in the name of the state, but instead by separate state agency such as a school board or other body politic capable of bringing suit and

11

being sued in its own name.

A determination as to the imprescriptibility of the School Board's claims for restoration of Section 16 lands must be mindful of the Louisiana statutes pertaining to the actions involving school lands. More particularly Title 41, Public Lands, Chapter 6, Part IV entitled "ACTIONS INVOLVING SCHOOL LANDS" provides in pertinent part the following statutes:

SUBPART A. ACTIONS BY THE STATE

**§ 921.  Action for recovery of title and damages for trespass**
The Attorney General may contract with and employ attorneys at law to sue for and recover from any person, firm or corporation, claiming under title, sixteenth sections known as school lands, title to which belongs to the State of Louisiana, and to sue for and recover damages for trespass upon sixteenth sections known as school lands except where the school boards have sold timber thereon, whether the trespasser claims under color of title or not.

* * *

**§923.  Suit in name of State**
In all cases suit shall be brought for and in the name of the State of Louisiana.

**§924.  Lands to which applicable**
The authority given by this Sub-part shall apply to all sixteenth sections donated by Congress of the United States to the State of Louisiana in trust for public school purposes, and to which the state has never legally parted with the title.

**§ 925.  Disposition of Proceeds**
All moneys recovered for the state shall, after deducting and paying the attorneys' fees, and all other lawful costs and charges, be paid into the state treasury, to be kept on the books of the State Auditor and the State Treasurer, to the credit of the township in which the land is situated, in the same manner as now provided by law for the proceeds of the sale of sixteenth sections.

SUBPART B.  ACTIONS BY SCHOOL BOARDS

**§ 961.  Actions for recovery of title and damages for trespass**
The school boards of the various parishes of the state may contract with and employ on the part of the State of Louisiana, attorneys at law, to recover for the state, damages for trespass to the sixteenth section known as school lands the title to which is still in the state. Each of the boards may make these contracts for the lands situated in its own parish and no others. The school boards may also sue for and

12

recover the sixteenth section known as school lands.

\* \* \*

**§ 963.  Suit in the name of state; scope**

Suit in all cases shall be brought in the name of the State of Louisiana, and the attorneys employed shall sue for the value of all timber cut and removed from any such lands, as well as any and all other legal damages cause by any trespass.

**§ 964.  Lands to which applicable**

The authority given by this Sub-part shall apply to all sixteenth sections donated by congress to the state in trust for public school purposes, and to which the state has never legally parted with the title.  The suits herein authorized may be brought against those who claimed the right to cut and remove timber from any such lands, under color of title.

**§ 965.  Disposition of proceeds**

The amount recovered by the state shall, after deducting and paying the attorneys' fees and all other lawful costs and charges, be paid into the state treasury, to be kept on the books of the State Auditor and State Treasurer, to the credit of the township in which the land is situated, in the same manner as not provided by law for the proceeds of the sale of sixteenth sections.

LA. REV. STAT. ANN. §§ 41:921-925, 961-965 (West 1990).

Under this framework, the school boards administer the lands, but both the state and the school boards are able to bring suit with regard to Section 16 lands.[24]  According to the School Board, its suit is not on behalf of itself, but for the protection of Section 16 lands owned by the state and managed by the School Board.  Nevertheless, the plaintiff did not file suit in the name of the state as required by Louisiana statute under the circumstances.  *See id.* at § 963.

The School Board's reliance on *State v. F.B. Williams Cypress Co.,* 58 So. 1033 (La. 1912) is misplaced.  In *F. B. Williams,* the Louisiana Supreme Court held that prescription did not apply to a suit by the state to recover damages for timber that was improperly sold by a school board.  *See*

---

[24]*See* LA. REV. STAT. ANN. §§ 41:921-25 (granting the state right to sue on its own behalf for recovery of title and trespass to Section 16 lands); LA. REV. STAT. ANN. §§ 41:961-65 (granting school boards same right to sue *but only in the name of state*).

13

*F.B. Williams,* 58 So. at 1035-37. The court recognized that the Section 16 land was owned by the state, to be managed for the benefit of the school board. *Id.* at 1035. Furthermore, it determined that the action was not prescribed even though Louisiana state law provided school boards with the right to sue regarding Section 16 lands. Such suits, it noted, are required to be brought in the name of the state and paid into the state treasury. *Id.* at 1036-37. Accordingly, such suits receive the benefit of the immunity from prescription. *Id.*

It is critical to a determination of this issue to note that this is not a mineral rights case, nor is it a matter of acquisitive prescription. The only question herein involves a claim for damages for alleged destruction of property as a result of the continued existence of a canal on the tract. In the case of *Board of Commissioners of Caddo Levee District v. Pure Oil Company,* 167 La. 801, 120 So. 373 (La. 1928), a case concerned with prescription under article 3521, the defendant oil company sought to recover certain royalties which had been previously paid by it to the Levee District. The lands in question had been certified to the Levee District from the State, but later by consent judgment, the certification was adjudged null and title reverted to the State. The Louisiana Supreme Court held that the three-year prescriptive period pled by the defendant ran against the Levee Board even though it was an agency of the State. The Court held:

> It appears, therefore, from the foregoing, that the plea of prescription presented is one pleaded against an agency of the state, created by the Legislature, to accomplish certain public purposes, devolving primarily upon the state, in bar of a demand for royalties, under a mineral lease, granted by that agency, on land conveyed to it by the state, to aid in accomplishing those purposes. It also appears that the first question presented is whether prescription runs against an agency of the state on such a demand. *If the question presented involved the loss by prescription of the mineral rights themselves*, on land conveyed or certified to a levee district, under the Constitution of 1921, we should most likely hold, in view of the conclusion reached in *State ex rel. Board of Commissioners of Tensas Basin Levee District v. Grace,* 109 So. 830, that, as the levee district must retain such mineral rights, it could not lose

14

them by prescription, for a state agency cannot lose by prescription that which it must retain, and cannot alienate. But no such question is presented here, but only the question as to whether the demand of a levee district for certain royalties, under a lease, granted in 1910 on land certified to it in 1901 is prescribed.

* * *

Plaintiff has, and always has had, the right to sue and be sued in its corporate name. It is a separate entity from the state, created by the state, it is true, to accomplish certain public purposes, but is nevertheless distinct from it. We think that the foregoing excerpt from the case last cited is applicable here, and we therefore rule that the prescription pleaded runs against the plaintiff.

*Pure Oil*, 120 So. at 376-77 (emphasis added). The Louisiana Supreme Court further discussed the

case of *Port of New Orleans v. Toyo Kisen Kaisha*, 113 So. 127 (La. 1927), which addressed the

question of whether prescription *liberandi causa* ran against a state agency. The plaintiff in the *Port*

*of New Orleans, supra*, was a state agency and the cause of action was one for damages caused to

one of the wharves of the port by the defendant's negligence. The Port of Orleans urged the Court

to find that because it was a state agency, prescription did not run against it, since prescription does

not run against the State in civil matters. The Court rejected the plaintiff's suspension of prescription

argument that the state's constitutional immunity applied equally to the Port as a State agency (*i.e.*,

the State). The Court stated that it was not prepared to hold that constitutional suspension of

prescription established in favor of the State applied to any or all other public corporations or

agencies. In *Port of New Orleans,* the Louisiana Supreme Court explained "[t]his constitutional

provision is only the reduction to statutory form of a principle of public law already established by

universal jurisprudence, which principle has very generally been confined to actions brought by and

in the name of the State itself. " *Id.*

The district court herein rejected the School Board's argument that it was immune to

prescription under Louisiana state constitution article 12, §13. The court held that this provision

is inapplicable when the suit is brought not by the state, but by a separate state agency such as a

school board. In so holding, it relied on *State through Department of Highways v. City of Pineville,*

403 So. 2d 49 (La. 1981), in which the Louisiana Supreme Court held that the Department of

Highways could not claim constitutional immunity from prescription because it was not the "state."

In *City of Pineville,* the Louisiana Department of Highways sued the City to recover highway funds

it had advanced to speed along a project.  Although the prescriptive period had expired, the

Department of Highways argued that it should be able to take advantage of the state's constitutional

immunity from prescription.  The Louisiana Supreme Court rejected that argument, holding that:

> the "State," for the purposes of the constitutional immunity from prescription, does
> not include a state agency which is a body corporate with the power to sue and be
> sued and which, when vested with a cause of action, is the sole party capable of
> asserting it.  Regardless of its status as an instrumentality of the state, such an agency
> remains a distinct legal entity subject to claims of prescription except where the law
> provides otherwise.

*Id.* at 52.[25]  Despite this holding, however, the Louisiana Supreme Court did provide one apparent

exception, stating that "[c]onsistent with this view, it has also been held that, when the state holds

title to property, prescription cannot run, notwithstanding the fact that the property is administered

by a state agency." *Id.* (*citing F.B. Williams, supra*).

The instant case, however, does not fall within the holding of *F.B. Williams.*  The School

Board's claim is allegedly, at least in part, a contract claim based on a mineral lease that it apparently

entered into *under its own name.*  Moreover, unlike in *F.B. Williams,* the case was not brought in the

---

[25]*See also State ex rel. Governor's Special Commission on Education Services v. Dear*, 532
So. 2d 902, 904 (La.App. 5th Cir. 1988) (affirming judgment in the defendant's favor on the
exception of prescription, noting that the petition showed the case was prescribed and that the state
agency had the burden of proving suspension or interruption of prescription as did the Department
of Education in *City of Pineville*, and holding that as a distinct legal entity, the Commission "must
be considered amenable to prescription").

name of the State of Louisiana as required by statute, but *only* in the name of the School Board.

Moreover and as previously discussed, Louisiana's statutory provision addressing precisely the same

kind of restoration claims that the School Board now seeks to prosecute in its own right requires that

such suit be brought *in the name of the state*. *See* LA. REV. STAT. ANN. § 41:963 (West 1990).

The School Board argues on appeal that it is exempt from prescription as a by-product of

solidarity because under the applicable law, any act that interrupts prescription for one of several

solidary obligees benefits all other solidary obligees. *See* Brief of Plaintiff-Appellant Terrebonne

Parish School Board, at pp. 13-14 (citing La. Civ. Code art.1793). This novel argument assumes

without demonstrating (1) "an act" by the state that interrupts prescription,[26] and (2) privity *vis a vis*

the SNG/School Board mineral lease. *See id.* Mobil contends that the School Board waived any

claim that the law of solidarity confers immunity from prescription.[27] Alternatively, Mobil contends

that state's immunity from prescription is not an "act " that "interrupts" prescription, but rather a

statutory exemption from the application of prescription altogether. In either case, the School Board

thus bears the burden of proving any exemption from the application of prescription.

We consider an issue raised for the first time on appeal only if it presents a purely legal

question and failure to address it would result in a grave injustice.[28] We see no reason to excuse

---

[26] "Any act that interrupts prescription for one of the solidary obligees benefits all the others." LA. CIV. CODE ANN. art. 1793 (West 1987).

[27] Mobil correctly notes that in the district court, the School Board never pressed the issue of its alleged status as a co-solidary obligee with the state conferring immunity from prescription.

[28] *See, e.g., Martinez v. Texas Department of Criminal Justice,* 300 F.3d 567, 574 (5th Cir.) (noting the Circuit's long established course of refusing, absent extraordinary circumstances, to entertain legal issues raised for the first time on appeal and holding that even some form of an intervening decision doctrine would not excuse the procedural default of failing to raise the claim to the district court), *reh'g and reh'g en banc denied,* __ F.3d __ (5th Cir. 2002); *see also Kelly v.*

procedural default of the issue of whether some as yet unspecified "act" by the state interrupted prescription with respect to the School Board's claims in its own right as royalty holder. Nothing in the summary judgment record or the district court's opinion reflects either that the School Board raised this fact-intensive argument for exemption from prescription or that the district judge was aware of it. Moreover, dismissal of the School Board's claims will not result in a grave injustice. [29] Indeed, the School Board as the party asserting suspension, interruption, and/or exemption from prescription had the burden of proof with regard to overcoming that *prima facie* defense.[30]   As to solidarity, the School Board pressed no argument and likewise offered no evidence.   Under Fed.R.Civ.P. 56(e), the moving party need not produce evidence showing the absence of an issue of material fact with respect to an issue on which the non-moving party bears the burden of proof.[31]

Accordingly and under the circumstances presented in this particular case, the district court correctly ruled that the School Board is not entitled to invoke the state's immunity from prescription.

---

*Foti,* 77 F.3d 819, 823 (5th Cir.) (A party must press an argument in order to preserve it for appeal, placing the opposing party and the court on notice that a new issue is being raised), *reh'g and reh'g en banc denied,* 85 F.3d 627 (5th Cir. 1996).

[29]Louisiana law specifically provides that claims of this ilk regarding Section 16 lands, where title is held by the state, must be brought in the name of the state. *See* LA.REV.STAT. ANN. §§ 41:923 & 963 (West 1990). Admittedly, the dismissed claims were not prosecuted in the name of the state, but rather by the School Board, and then only in its capacity as royalty owner.

[30]*See, e.g., In re Moses,* 788 So. 2d at 1177-78.

[31]*See, e.g., AFCO Steel, Inc. v. TOBI Engineering Inc.,* 893 F.2d 92, 94 (5th Cir. 1990) (per curiam) (affirming summary judgment on prescription of a redhibition claim, agreeing with appellee that suspension of prescription is a matter of defense that need not be negated until the appellant offers some evidence in support of the exemption from prescription, and citing Fed.R Civ.P. 56(e) and *Celotex Corporation v. Catrett,* 477 U.S. 317 (1986)).

## C. Tort Damages (Delict)

The School Board contends that summary judgment was not proper because (1) prescription of its tort claims turned on notice, (2) the evidence of notice about erosion on Section 16 lands generally and not specific to Section 16 (T18S-R12E) is insufficient to commence the running of prescription, and (3) either or both the doctrines of *contra non valentem* and continuing tort operate to suspend Louisiana's one-year prescriptive period applicable to delictual claims. Mobil contends that the summary judgment record clearly reflects actual notice of tract specific erosion damage and causation, and thus judgment of dismissal of the tort claims on the basis of prescription should be affirmed. Mobil contends that neither the doctrine of continuing tort nor *contra non valentem* operate to suspend prescription considering the undisputed facts in the summary judgment record. Mobile highlights two reports which evidence actual notice with respect to the subject tract, to wit: (1) Surveyor Morris P. Hebert, Inc.'s Report to the School Board dated April 13, 1995, which is tract specific;[32] and (2) Malcolm Poiencot's March 27, 1997 tract specific inspection summary provided to the School Board.[33] Our review of the record supports Mobil's position. It is uncontroverted that well-over two years prior to the commencement of the instant lawsuit the School Board had actual notice of erosion damage with respect to Section 16 (T18S-R12E), and at the very least constructive knowledge of causation as well.

Because the School Board's tort claims involve damage to immovable property it is subject to the one-year liberative prescriptive period which commenced from the day the plaintiff acquired

---

[32]*See* Correspondence of Morris P. Hebert, Inc. Hydrographic Surveyors dated April 13, 1995 [Rec. Vol. III of IV at Bates Stamp 781-785].

[33]*See* Correspondence of Malcolm Poiencot to the School Board dated March 27, 1997 [Rec. Vol. III of IV at Bates Stamp 813-814].

19

or should have acquired knowledge of the damage. LA. CIV. CODE ANN. art. 3493 (West 1994).[34] The record in this case amply demonstrates that the Board had actual notice of the damages complained of with respect to Section 16 (T18S-R12E) in particular. This case is readily distinguished from *Columbia Gulf Transmission*,[35] in which another panel of this Court discerned no evidence in the summary-judgment record regarding erosion damage specific to the particular Section 16 tract at issue.

Louisiana's discovery rule as enunciated in article 3493 applicable in cases of damage to land is essentially congruent with the doctrine of *contra non valentem*,[36] and thus a discussion of article 3493 prescription necessarily entails a discussion of *contra non valentem* insofar as it pertains to this case. The doctrine has been parsed into four categories, only one of which is applicable in this case[37]

---

[34]*See also Crump v. Sabine River Authority*, 737 So. 2d 720, 729 (La. 1999); *Terrebonne Parish School Board v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 319 (5th Cir.), *reh'g and reh'g en banc denied*, __ F.3d __, 2002 WL 1397176 (5th Cir. 2002) (In cases of damage to land, prescription commences to run when the owner gains either actual or constructive knowledge, not when the damage occurs.); *Trizec Props., Inc. v. United States Mineral Prods. Co.*, 974 F.2d 602, 607 (5th Cir. 1992)(discussing Louisiana's discovery rule as it applies to prescriptive articles 3492 and 3493 and noting that "the prescriptive period on a cause of action begins to run when the person in whose favor a cause of action exists knows or should have known of the existence of his cause of action ").

[35]290 F.3d at 321.

[36]*Contra non valentem* is a judicially created exception to prescription based on the civil doctrine of *contra non valentem agere nulla currit praescriptio*, which means that prescription does not run against a party who is unable to act. *See Columbia Gulf Transmission*, 290 F.3d at 320 (*citing Cartwright v. Chrysler Corp.*, 232 So. 2d 285, 287 (1970)); *see, e.g., In re Moses*, 788 So. 2d at 1178-79 n.10 (noting that the exception is the substantial equivalent of the discovery doctrine applicable to cases in which the cause of action is not immediately knowable, such that prescription does not begin to accrue until the plaintiff should have discovered that he had a reasonable basis for pursuing a claim against the defendant).

[37]The four instances recognized by Louisiana's highest court where the doctrine may apply to suspend the running of prescription are: (1) where there was some legal cause that prevented the

(*i.e.*, that the cause was not reasonably knowable by the School Board until it filed suit). The heart of the inquiry into the School Board's constructive knowledge of the cause of the damage to Section 16(T18S-R12E) is the *reasonableness* of its inaction.[38] As early as 1995, the School Board had actual knowledge of the erosion damage to the particular tract at issue and even then, constructive knowledge of the causation element as well. In March of 1995, Morris P. Hebert Inc. advised the Board both of the extant canal causing scouring and deterioration of the marshland habitat, and of the opposition to any closure of the canal on the subject tract by the School's Board's then current lessee Pennzoil. Malcolm Poiencot's March 27, 1997 inspection summary addressed to the School Board is also tract specific, replete with photographs of the canal on the subject property and the canal's ever-widening opening.[39] Suffice it to say, the summary judgment record demonstrates that as early as March 1995 the School Board had the requisite knowledge of the damage and causation with respect to the subject tract, but failed to act. We are satisfied by this evidence of actual notice resulting from overt knowledge of the damage to the specific property at issue in this case. Constructive knowledge of the causation element as of that date with respect to the specific tract is

---

courts from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings that prevented the creditor (plaintiff) from suing or acting; (3) the debtor (defendant) himself has done some act effectually to prevent the plaintiff from availing himself of his cause of action; or (4) the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. *Crump,* 737 So. 2d at 730 (*citing Plaquemines Parish Comm'n Council v. Delta Development Co.*, 502 So.2d 1034, 1054-55 (La. 1987)); *Whitnell v. Menville*, 540 So. 2d 304, 308 (La. 1989).

[38]*Columbia Gulf Transmission,* 290 F.3d at 303 (*citing Picard v. Vermillion Parish School Board*, 783 So.2d 590 (La. App. 3rd Cir. 2001)).

[39]*See* Correspondence of Malcolm Poiencot to the School Board dated March 27, 1997 [Rec. Vol. III of IV at Bates Stamp 813-814].

21

also manifest in the summary judgment record.

Moreover, the uncontroverted facts set forth in the documents of record witness an attitude on the part of the School Board that is tantamount to willful neglect, which stands in strident contradistinction to any notion of *reasonable* inaction. The record documents uniformly demonstrate that despite Coastal Environments' even earlier forecast of monstrous damage, followed by the Board's actual knowledge of the damage and causation with respect to the particular tract, the School Board did not timely heed the call of responsible stewardship, but instead unreasonably delayed taking legal action seeking restoration of eroding Section 16 (T18S-R12E).

The Louisiana Supreme Court has often noted that basic principle of the doctrine (*contra non valentem*) is equity.[40]  The principles of equity and justice form the mainstay of the doctrine and demand suspension *when the plaintiff is effectively prevented form enforcing his rights for reasons external to his own will*, notwithstanding the general rule that "prescription runs against all persons unless exception is established by legislation."[41]  *Contra non valentem* does not suspend prescription when a litigant is perfectly able to bring its claim, but fails or refuses to do so.[42]  The principles of equity, justice, and fairness that underpin the doctrine are absent in this case.

The doctrine of continuing tort presents an exception to the one-year prescriptive period. However, it also is not applicable to this case.   A continuing tort is occasioned by continuing

---

[40]*See Rogers v. Corrosion Products, Inc.*, 42 F.3d 292, 295 (5th Cir. 1995) (*citing Plaquemines Parish Comm'n Council*, 502 So. 2d at 1057)).

[41]LA. CIV. CODE ANN. art. 3467 (West 1994).

[42]*See, e.g., Hendricks v. ABC Ins. Co.*, 787 So. 2d 283, 293 (La. 2001) (refusing to mechanically apply the continuous representation rule as encompassed by *contra non valentem* in a vacuum to suspend prescription in a case where the plaintiff was advised that he had a *potential* malpractice claim and nevertheless failed to file suit within the appropriate prescriptive period).

unlawful acts, and there are no such continuing unlawful acts by Mobil. Without a continuing duty owed to the plaintiff and a continuing breach of that duty by a defendant, there is no continuing tort. *See Crump*, 737 So. 2d at 728.

In *Crump,* the Louisiana Supreme Court rejected the contention that a continuing breach of duty could consist of a defendant's failure to remedy the harm caused by the initial tortious conduct, stating that "the breach of the duty to right the wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor." *Id.* at 729.    Recently, the Louisiana Supreme Court summarized the doctrine of continuing tort as it applies in Louisiana property law cases as follows:

> Recently, we clarified the continuing tort doctrine in a property law case, *Crump v. Sabine River Authority,* 98-2326 (La.6/29/99), 737 So.2d 720. We held that "[a] continuing tort is occasioned by [the continual] unlawful acts, not the continuation of the ill effects of an original, wrongful act." 98-2326 at p. 9, 737 So.2d at 728. Addressing the requirement that there be continuous conduct by the defendant, we stated that "[t]he continuous conduct contemplated in a continuing tort must be tortious and must be the *operating cause* of the injury." 98-2326 at p.11, 737 So.2d at 729 n.7.
>     When a defendant's damage-causing act is completed, the existence of continuing damages to the plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort. *Derbofen v. T.L. James & Co.*, 355 So.2d 963 (La.App. 4th Cir.1977), *writs denied*, 357 So.2d 1156, 1168 (La.), *cert. denied*, 439 U.S. 911, 99 S.Ct. 280, 58 L.Ed.2d 257 (1978).

*In re Moses*, 788 So. 2d at 1183. The practical rule adopted by Louisiana courts in property damage cases is that prescription begins to run when the continuous tortious conduct is abated. *See In re Moses,* 788 So. 2d at 1184-1186 (applying the same principle in the medical malpractice setting when the case involves a single act of medical malpractice as opposed to a continuous course of treatment).

Unlike the facts of the case considered by the panel in *Columbia Gulf Transmission*,[43] there was no continuing unlawful conduct by defendant Mobil. The completed well was abandoned with the canal left intact in 1959, approximately forty years before suit was filed by the School Board. As discussed in greater detail later in this opinion, this case does not concern either a servitude, mineral lease or any other contract by and between the School Board and Mobil. Hence, there is no possibility that "unlawful acts" include omissions for any breach of a special duty owed, whether to a servient estate or otherwise. Here, the defendant's conduct ceased decades earlier obviating even the possibility of liability for continuing tort.

As stated at the outset, the School Board had the burden of proof with respect to establishing an exception to prescription, whether by *contra non valentem*, continuing tort, or any other exemption from application of prescription. The plaintiff was required to adduce evidence sufficient to raise a material issue of fact regarding its claim of an exception from prescription, but failed to do so. Mere allegation or innuendo is insufficient to establish an exception to prescription under Louisiana law. Given the summary judgment record which, when viewed in a light most favorable to the School Board, evidences only certainty that it had knowledge of both erosion damage and its causation in Section 16 (T18SR12E) at least four years prior to the filing suit, we affirm the district court's judgment dismissing the plaintiff's tort claims as prescribed.

### D. Contractual Damages (*Ex Contractu*)

An action on a contract is governed by the prescriptive period of ten years for personal actions. LA. CIV. CODE ANN. art. 3499 (West 1994); *Roger v. Dufrene,* 613 So. 2d 947 (La. 1993). The School Board's argument on appeal is essentially that Mobil's failure to maintain the banks of

---

[43]290 F.3d at 323 ("Both continuing damage and continuing conduct are at issue here.").

the canal constitute breach of contract making it liable for the erosion damages due to scouring and the influx of sea water into the marshland tract.   The correct prescriptive period to be applied in any action depends on the nature of the action; it is the duty breached that should determine whether an action is in tort or contract.   *Roger, supra.*   The classical distinction between contractual and delictual damages is that the former flow from an obligation contractually assumed by the obligor, whereas the latter flow from a violation of general duty owed by all persons.[44]  *Davis v. Leblanc,* 149 So. 2d 252, 254 (La. App. 3rd Cir. 1963); *Kelly v. City of Leesville*, 897 F.2d 172, 177 (5th Cir. 1990). However, even when a tortfeasor and victim are bound by a contract, Louisiana courts usually apply delictual prescription to actions that are really grounded in tort.[45]

---

[44]Explaining the distinction between delictual and contractual fault, Planiol wrote: What does one understand from such words?  Contractual fault is that which is committed on the occasion of the execution of a contract.  It consists in violating a contractual obligation.  As to the delictual fault, most authors say that it is 'an act productive of obligations which takes place between persons juridically strangers to to each other.'  Thus contractual fault supposes the pre-existence of an obligation which is the inexecution thereof, while delictual fault supposes the absence of the obligation, and its result is the creation of one.

*See State ex rel Guste v. Simoni, Heck & Associates,* 331 So. 2d 478, 490 (La. 1976) (Summers, J., dissenting) (*quoting* 2 M. PLANIOL, TREATISE ON THE CIVIL LAW, Nos. 873-74 at 485-86 (11th ed. La. State L. Inst. trans. 1939)).

[45]*See, e.g., Trinity Universal Insurance Co. v. Horton,* 756 So.2d 637, 638 (La. App. 2nd Cir. 2000) (holding liability for breach was *ex delicto* even though a contract for installation of the brakes that failed existed,  because breach of a *specific* contract provision was not alleged); *Harrison v. Gore,* 660 So.2d 563, 568-69 (La. App. 2nd Cir.), *cert. denied,* 664 So.2d 426 (La. 1995) (noting that the one-year delictual prescriptive period must be applied to tort claims unless the cause of action is clearly shown to arise from contract); *Sterling v. Urban Property Co.,* 562 So.2d 1120 (La. App. 4th Cir. 1990) (apartment tenant claim of sexual harassment against landlord's business partner prescribed in one year); *Stephens v. International Paper Co.,* 542 So.2d 35 (La. App. 2nd Cir. 1990)(timber cutting contractor negligently left open gate, allowing cattle to escape); *Newsome v. Boothe,* 524 So.2d 923 (La. App. 2nd Cir. 1988) (legal malpractice is governed by one-year tort prescriptive period, unless attorney warrants a certain result); *Gerdes v. Estate of Cush,* 953 F.2d 201 (5th Cir. 1992) (agent's failure to investigate proposed real estate purchase is governed by one-year prescription).

25

Where a claim for breach of contract exists, plaintiff is entitled to plead his case for damages *ex contractu* and assert the ten-year statute of limitations applicable to actions for breach of contract. However, in order for the ten-year statute of limitations applicable to actions for breach of contract to apply, plaintiff has the burden to prove that the defendant breached some contractual duty above and beyond a general duty not to damage another's property. *Certain Underwriters at Lloyd's v. Sea-Lar*, 787 So.2d 1069, 1075 (La. App. 4th Cir. 2001).

The School Board contends that generalized knowledge of erosion damage regarding Section 16 lands was insufficient to trigger Louisiana Civil Code article 3499's ten-year liberative prescription period applicable to its contractual claims. However, the summary judgment record is devoid of any evidence of a contract between the School Board and Mobil, or of any assignment of interest or lease of the subject tract to Mobil. Indeed, there is an utter absence of proof that the parties in this case are juridical acquaintances.

We are free to affirm the dismissal based on any rationale presented to the district court for consideration and supported by facts uncontroverted in the summary judgment record. *See In Re Williams*, 298 F.3d 458, 462 (5th Cir. 2002); *Grenier v. Medical Engineering Corp.*, 243 F.3d 200, 207 (5th Cir. 2001). Mobil contends, as it did in its motion for summary judgment filed with the district court, that in the absence of contractual privity the School Board's breach of contract claims against it must fail. Because of the complete failure of proof with respect to a contract or contract provision setting forth an obligation enforceable against Mobil, we agree.

Although Mobil cut the accessory canal and conducted drilling operations on the subject tract solely pursuant to a farmout agreement with SNG (the School Board's original mineral lessee), the School Board sued Mobil directly. A farmout agreement is an *executory contract,* and until it is

26

fully performed and an assignment of interest actually executed, there is no privity between the lessor and the assignee/sublessee. *See Chevron U.S.A., Inc. v. Aguillard,* 496 F. Supp. 1031, 1033 (E. D. La. 1980); *A. J. Robinson v. North American Royalties, Inc.,* 509 So. 2d 679 , 681 (La. App. 3rd Cir. 1987)(Because a farm-out agreement is an executory contract with a suspensive condition, no privity exists even between the lessor and the assignee of the lessee under a farm-out agreement until the obligations are fully performed and the assignment actually executed.).

To assert a cause of action for breach of contract, the School Board must prove both the existence of a contract and privity. Evidence of a Mobil/SNG farm-out agreement is proof of neither. The district court in *Chevron U.S.A., Inc. v. Aguillard* explained that:

> Farm-out agreements are frequently utilized in the petroleum industry in instances where the owner of a mineral lease is unable or unwilling to drill on a lease which is nearing expiration but is willing to assign an interest to another who will assume the drilling obligations and save the lease from expiring. Frequently an overriding royalty is retained and such agreements are evidenced by informal letter agreements. In other words, a farm-out agreement is a contract to assign oil and lease rights in acreage upon the completion of a drilling obligation and performance of other provisions therein contained. It is an executory contract and until it is fully performed and the assignment actually executed, there is no privity between lessor and the assignee.

496 F. Supp. at 1033. Because Louisiana law views farm-out agreements as prefatory (*i.e.,* contracts subject to a suspensive condition), no assignment or transfer is effected, and there is no obligation even to execute the necessary documents to effect such a transfer, until the suspensive condition occurs, which is generally completion of a productive well and performance of other obligations contained therein. *See Massey v. Decca Drilling Co., Inc.,* 647 So. 2d 1196, 1198 n.2 (La. App. 2nd Cir. 1994)(a farm-out agreement is a contract to assign oil and lease rights in acreage upon completion of drilling obligations); *Robinson v. North American Royalties, Inc.,* 509 So. 2d 679 (La.

27

App. 3rd Cir. 1987) (same).

The School Board's argument that Article 128 of the Mineral Code provides the basis for code-imposed privity of contract between itself as lessor and the "farm-outee"(*i.e.*, Mobil) is neither supported by Louisiana jurisprudence nor Louisiana's Mineral Code. Article 128 provides that only "*[t]o the extent of the interest acquired,* an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the lessor for performance of the lessee's obligations." *Id.* (emphasis added).

The *Robinson* case involved an actual assignment/sublease rather than an executory farmout agreement. The party seeking overriding royalty from a subsequent sublessee had an extension clause recorded in his favor and the sublessee had contracted a mineral lease with the original lessor. It was the new lease that was the subject of the lawsuit. Nevertheless, the *Robinson* court affirmed judgment dismissing the case against the sublessee, because the sublessee did not acquire an "interest" as to acreage not covered by the sublease. Highlighting the language of article 128 that a sublessee becomes responsible to the original lessor only "[t]o the extent of the interest acquired" by the sublessee, the *Robinson* court held there was no privity of contract and no cause of action against the sublessee as to the acreage not covered by the sublease. *Robinson,* 463 So. 2d at 1384 (quoting LA. REV. STAT. ANN. § 31:128).

In the case at bar, Mobil never acquired an "interest" in the acreage at issue. The summary judgment record is uncontroverted that there was no assignment of interest in the mineral lease to Mobil.[46] Drilling operations were not productive, and thus Mobil plugged and abandoned the well.

---

[46]The Comment to article 128 of the Mineral Code of 1975 notes that "[i]nsofar as assignments are concerned, Article 128 represents the present law." Comment, LA. REV. STAT. ANN. § 31:128 (West 2000).

Assuming without deciding that Article 128 of the Mineral Code is retroactively applicable to the School Board,[47] in the absence of proof of an assignment or acquisition of any interest in the lease by Mobil, there can be no code-imposed privity. *See Robinson*, 463 So. 2d at 1384.

In summary, the School Board failed to offer any evidence of contract as required and there is no code-imposed privity *via* Article 128 absent proof that Mobil acquired an "interest" in the School Board's mineral lease. Absent proof of contract and privity, the School Board's contractual claims were properly dismissed, and it is not entitled to claim the benefit of ten-year liberative prescription applicable to actions *ex contractu*.

### III.  CONCLUSION

In this action filed by the School Board in its own right as royalty owner and not in the name of the state involving Section 16 land, Mobil bears no liability. The School Board's claims *ex delicto* are prescribed and there is no contractual privity. For these reasons, summary judgment dismissing the case against Mobil is hereby AFFIRMED.

---

[47]Louisiana's Mineral Code of 1975 generally applies retroactively. *See Central Pines Land Co. v. United States,* 274 F.3d 881, 894-95 n. 64 (5th Cir. 2001) (involving the issue of prescription of mineral servitudes and citing La. Rev. Stat. § 31:214 which provides that the Mineral Code is to be applied retroactively unless it would divest already vested rights or impair the obligation of contracts), *cert. denied,* 2002 U.S. App. LEXIS 6009 (U.S. Oct. 7, 2002) (No. 01-1799).

OP-JDT-7

U.S. COURT OF APPEALS
RECEIVED

NOV 2 1 2002

NEW ORLEANS, LA.

U.S. COURT OF APPEALS
FILED

NOV 2 1 2002

CHARLES R. FULBRUGE III
CLERK

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

BILL OF COSTS

Terrebonne Parish School Board

v.   Mobil Oil Corporation

No. _____ 01-31190 _____

**NOTE: The BILL of Costs is due in this office *within 14 days from the date of the opinion.* See Fed. R. App. P. & 5th Cir. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.**

The Clerk is requested to tax the following costs against: _____ Terrebonne Parish School Board _____

| COSTS TAXABLE UNDER Feb. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (if different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket fee ($100.00) | | | | 100.00 | | | | |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | 12 | 52 | .25 | 156.00 | 12 | 52 | .25 | 156.00 |
| Appellant's Reply Brief | | | | | | | | |
| Other: | | | | | | | | |
| | | | Total $ | 256.00 | Costs are taxed in the amount of $ | | | 156.00 |

Costs are hereby taxed in the amount of $ ___156.00___ this ___5TH___ day of ___DECEMBER___ 2002

By ___[signature]___
CHARLES R. FULBRUGE III, CLERK
Deputy Clerk

State of Louisiana
XXXXXXX Parish of Orleans

I Robert B. McNeal _____, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This ___21st___ day of ___November___ 2002 _____.

___[signature]___
(Signature)

Attorney for ___Mobil Oil___

* SEE REVERSE SIDE FOR RULES GOVERNING TAXATION OF COSTS